## TITLE GUARANTEE & TRUST CO. v. UNITED STATES.

### No. 3269.

District Court, S. D. California, Central Division.

April 29, 1931.

Marc F. Mitchell and George G. Witter, both of Los Angeles, Cal., for plaintiff.

Samuel W. McNabb, U. S. Atty., and Harry G. Balter, Asst. U. S. Atty., both of Los Angeles, Cal., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and E. H. Horton, Atty., Bureau of Internal Revenue, both of Washington, D. C.

JAMES, District Judge.

This suit is brought to recover the sum of $30,598.69, with interest, alleged as constituting an overpayment of income taxes for the calendar year 1922. Plaintiff made its return to the revenue collector for the year in question, and paid a tax amount of $74,-112.15. After audit by the Revenue Department, an additional tax of $5,696.25 was assessed, which plaintiff paid. A claim for refund was duly presented, in which it was asserted that the plaintiff was an insurance company, and that certain amounts not subject to tax had been included in its return, with the result that, where the net income on the return was shown as $592,897.22, the correct amount of net income should have been stated as $348,107.68, with a reduced tax amount of $43,513.46. The specific items of income claimed to have been erroneously included in plaintiff's return were set forth as follows:

| | | | |
|---|---|---|---|
| Escrow Fees | | 431,361.16 | 107,215.60 |
| Reconveyances | 291,327.82 | | 8,277.33 |
| Trustee Fees | 105,379.52 | 396,707.34 | 93,642.82 |
| Recording and Advances | | | |
| Less Recording and Advances | | | |
| Revenue Stamps | | | 34,563.82 |
| | | | 244,789.57 |

It is admitted that, under whatever classification the plaintiff is brought, the item for recording and advances would not constitute income. The amount under that heading, however, is agreed to be the sum of .$34,653.-82 instead of $35,653.82. Defendant admits the right of the plaintiff to recover $4,331.71, which is 12½ per cent. of $34,653.72. As to the latter, interest should be added dating from March 15, 1923.

A determination of the controversy depends wholly upon the answer to be made to the question: Was the plaintiff, during the calendar year 1922, doing the business of an insurance company within the meaning of the Revenue Act? If, for the purpose of taxation, it should be classed as a general commercial corporation, then there can be no recovery on the main claim. It would not, in that case, be entitled to deduct items of in-

come specified as "escrow fees," "reconveyances," "trustee fees." Section 246 of the Revenue Act of 1921 (42 Stat. 262), contains the following provision: "(a) That, in lieu of the taxes imposed by sections 230 and 1000, there shall be levied, collected and paid for the calendar year 1922, and for each taxable year thereafter, upon the. net income of every insurance company (other than a life or mutual insurance company) a tax as follows: (1) in the case of such a domestic insurance company the same percentage of its net income as is imposed upon other corporations by section 230." .

In other subdivisions of the section referred to, the gross income of an insurance company is limited and defined to be that income only which is derived from "investment income and from underwriting income * * * computed on the basis of the underwriting and investment exhibit of the annual statement approved by the National Convention of Insurance Commissioners." Investment income is then defined to be "interest, dividends and rents." Underwriting income is defined to be "premiums earned on insurance contracts during the taxable year less losses incurred and expenses incurred." Section 246 (b) (1, 3, 4).

Without going into further detail, it will be sufficient to note that insurance companies were not required in 1922 to account for items of income other than those particularly specified, and were and are favored by the law as against corporations doing other classes of commercial business. While they paid the same per cent. on the net income as did other corporations, the net income did not include all items of income or profit, and did not include a special excise tax for the carrying on of business levied upon capital stock as is provided by section 1000 of the Revenue Act 1918 (see 40 Stat. 1126).

Plaintiff corporation was organized in the year 1895. Its articles declare the purposes for which it was formed to be as follows: "To lease or acquire Abstract Plants, to prepare Abstract Books, to examine public records, to prepare statements of any matter of record, including abstracts and certificates of title, which may guarantee and assure the

record title; issue policies of insurance, and other contracts and reports effecting title to real estate; to do a general trust business, act as agent, trustee, administrator, executor, guardian and fiduciary servant; to invest its funds and assets in secured loans, mortgages, bonds or other good properties; to acquire stock of other corporations; to hold and dispose of the same; to receive money and issue notes of indebtedness. All of said business shall be conducted for profit."

It has regularly complied with the requirements of the statutes of the state of California affecting corporations doing an insurance business. It has also maintained a trust department, and has acted as trustee to hold title to property for various purposes, including trustee relationship under trust deeds made in lieu of mortgages, as executor under wills, etc. In its trust department it has been under the inspection of the banking commissioner of the state of California, and in the handling of that business has complied with the banking laws of the state. Its income from the latter source has been substantial, and that business has apparently been considered by it as inseparable and necessary to the carrying out of the general purposes for which it was organized.

The two items in its claim for refund, as representing nontaxable income, to wit: "Reconveyances $8,277.33" and "Trustee Fees $9,364.82," were derived wholly from the trust department. "Escrow Fees" shown in the amount of $107,215.60, also charged as deductible, represents compensation for services in the escrow department; that is, where persons are arranging to purchase property, negotiate a mortgage, or consummate any transaction wherein documents are to be delivered or money passed upon title being shown as required, they submit their several instructions, with an order for certificate, and the company acts as depositary while making the title examination to comply with instructions given. The company acts as a searcher of records in its title department. It issues its certificate showing the condition of title, which carries with it the company's assurance that the search has been made with reasonable care. It issues what it calls its guarantee certificate, wherein a maximum amount of liability is fixed. In the latter, it makes no assurance that the records examined are free from fraud of any sort. It issues a third form of certificate, which it denominated "Policy of Title Insurance." The contract contained in such certificate form does answer strictly to that of "insurance." This contract indemnifies the insured in an amount which is fixed against loss caused by "failure of title, or by reason of any defects in, or liens, or incumbrances on * * *" real property, with such exceptions as are specified.

The argument on behalf of the plaintiff is that the main and principal business of the corporation is that of title insurance, and that the trust department and the escrow department are merely incidental and contributing agencies. It is said that the trust department receives transfers of tracts of land to be subdivided, and that it is part of the business of the trustee to furnish a certificate of title on the land and certificates to purchasers, all of which, it is argued, constitutes title insurance business. It is said that the escrow business is a necessary and natural feeder to such insurance business.

It cannot be doubted that Congress, in making an exceptional class of insurance corporations, intended that the corporations which were so favored in the payment of income tax should belong strictly to the class assigned to them. The corporation here had the option of limiting its business operations and functions to those which are the well-known attributes of insurance writing, but it cannot combine with insurance work a variety of other classes of profitable business and claim the exempt status which will result in its being relieved of a considerable tax which it would have to pay were the business other than insurance conducted separately. It would seem to be just as reasonable to argue that this company might engage in real estate brokerage, and maintain the claim that that business was merely an incidental adjunct operating as a "feeder" to its title insurance business, as to say that its trust department and also its escrow department were merely incidental to the insurance business. To so expand the business permitted of an insurance concern would result in a situation that certainly was not contemplated when the statute was passed. In Louisville Title Co. v. Lucas (D. C.) 27 F. (2d) 413, the District Judge there denied the contention of the plaintiff that it was entitled to be classified, for income tax purposes, as an insurance company. In the case of Home Title Insurance Co. v. United States, 41 F.(2d) 793 (D. C. E. D. N. Y.), District Judge Galston reached a similar conclusion with respect to the plaintiff there suing. A search does not disclose that either of these cases has been passed upon by a Court of Appeals, but the logic of the decisions seems sound and in accordance with common sense reasoning.

The request for findings and judgment as made on behalf of the plaintiff is denied, except as to the amount which is agreed was erroneously assessed on the item which did not constitute income of any sort. An exception will be noted in favor of the plaintiff. Findings and judgment otherwise are ordered to be entered for the defendant.