## GARDEN HOMES CO. v. COMMISSIONER OF INTERNAL REVENUE.

No. 4868.

Circuit Court of Appeals, Seventh Circuit.
March 30, 1933.

4. T

G. A. Youngquist, Asst. Atty. Gen., Sewall Key and Paul D. Miller, Sp. Assts. to Atty. Gen., and William H. Riley, Jr., and Walter Gellhorn, Department of Justice, both of Washington, D. C., for respondent.

Maxwell H. Herriott and Malcolm K. Whyte, both of Milwaukee, Wis., for petitioner.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

SPARKS, Circuit Judge (after stating the facts as above).

It is contended by petitioner that it is exempt from Federal income taxation because it is (1) a domestic building and loan association; (2) a co-operative purchasing agent; (3) a municipal agency; or (4) a civic organization not operated for profit.

Under the laws of Wisconsin the organization of building and loan associations is authorized under chapter 215, Statutes 1931. This is an entirely different statute from the one under which petitioner is organized, and the two are in no way connected or related. The requirements and the scheme of regulation of the former statute are not present in the latter, and from a reading of both statutes it is quite obvious that the Wisconsin legislature did not intend that petitioner should be considered a building and loan association. In support of its contention in this respect petitioner relies upon United States v. Cambridge Loan & Building Co., 278 U. S. 55, 49 S. Ct. 39, 73 L. Ed. 180. That case originated in Ohio, and it is to be distinguished from the instant case in that the laws of Ohio recognized the Cambridge Loan and Building Company as a building and loan association. We think the Board's ruling was right in holding that petitioner was not a building and loan association.

Petitioner concedes that it did not purchase supplies and equipment in the strict sense, but claims that it was a co-operative purchasing agent under section 231 (11) of the Revenue Act of 1924 (26 USCA § 982 note), and section 231 (12) of the Act of 1926, 26 USCA § 982 (12). The exempted groups which fall within those sections are farmers, fruit growers, or like associations, which are organized and operated either as sales agents for the purpose of marketing the products of members and turning back to them the proceeds of the sales, less the necessary selling expenses, or else as purchasing agents for the purpose of purchasing supplies and equipment for the use of members at actual cost. In construing corresponding sections of the Revenue Acts of 1916 and 1918, the Treasury Department said (I. T. 1312; C. B. I-1 p. 263) "In framing the Statute, Congress appears to have had in mind agricultural, fruit growing, and similar occupations. Under the doctrine of ejusdem generis the term 'like associations' should be confined to pursuits similar to farming and fruit growing." The subsequent re-enactment of that statutory provision requires that the administrative construction be considered as having been adopted by Congress. Brewster v. Gage, 280 U. S. 327, 50 S. Ct. 115, 74 L. Ed. 457; McCaughn v. Hershey Chocolate Co., 283 U. S. 488, 51 S. Ct. 510, 75 L. Ed. 1183. We are convinced that petitioner was not a co-operative purchasing agent within the meaning of the statute.

Petitioner's contention that it is exempt as a municipal agency is without merit. The exemption of state agencies and instrumentalities from national taxation is limited to those which are of a strictly governmental character, and does not extend to those which are used by the State in the carrying on of an ordinary private business. South Carolina v. United States, 199 U. S. 437, 26 S. Ct. 110, 59 L. Ed. 261, 4 Ann. Cas. 737; Flint v. Stone Tracy Co., 220 U. S. 107, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312. It is clear that petitioner performed no governmental functions.

In order to classify petitioner as a civic organization two facts must appear: (1) It must not have been organized for profit, and (2) it must be operated exclusively for the promotion of social welfare. Revenue Act of 1924, c. 234, § 231 (8), 43 Stat. 253, 282; Revenue Act of 1926, c. 27, § 231 (8), 44 Stat. 9, 39, 26 USCA § 982 (8); Article 519 of Treasury Regulations 65 under Revenue Act of 1924, and of Treasury Regulations 69 under Revenue Act of 1926.

We think it is quite obvious from the facts found that petitioner was not organized for profit. It is true that, so far as the statute and the articles of incorporation disclose, the organization might have been one for profit, but the history of the project and the manner in which it was conducted clearly indicate that no profit was contemplated. It is not controverted that the tenant stockholders were eventually to secure their homes at as nearly the cost price as was possible. The expense of conducting the business was of

course to be borne proportionately by the tenant stockholders, and this included taxes, repairs, depreciation, insurance, interest on borrowed money and a sufficient amount to pay the fixed return upon the preferred stock. All items of expense were deducted from the monthly dues of the tenant stockholders. Indeed there was no other source from which the expenses could be paid. After the payment of all expenses it was contemplated that the remaining portions of the monthly dues should be applied to the payment of the shares of common stock for which the tenant stockholders had subscribed. That this method was followed is proven by the passbook which was introduced in evidence, and it is admitted to be typical of all passbooks used. The expenses were estimated and it was provided by resolution that any overcharge would be refunded. The passbook discloses that dividends were declared upon the common stock and there is no evidence which indicates that petitioner retained or intends to retain as profits any amount in excess of the actual expense of the business, unless the amounts declared as dividends on both the preferred and common stock and the surplus derived from the monthly payments shall be so considered.

It is contended by respondent, however, that the books of petitioner do not reflect the distribution and application of balances upon the common stock as disclosed by the passbooks, but if that contention be true, we think it is not conclusive as against petitioner. The entries on the passbooks as well as those on petitioner's books of account were made by petitioner, and under the circumstances surrounding the unique project we think both should be considered in arriving at the intention of the parties. The passbooks disclose facts which are consistent in every respect with the original plan of operation without profit, and we think that petitioner's books of account are not necessarily inconsistent therewith. The articles of incorporation and the tenant stockholder's lease agreement in many respects are not clear, due no doubt to the novelty of the enterprise, but we think those uncertainties are not fatal to petitioner's contention. It does not appear from petitioner's books of account that tenant stockholders' monthly payments, after deducting the estimated expenses, were applied to the payment of common stock, but they were carried as an aggregated asset of the company, under the heading of rents received from common stockholders. The passbooks, however, disclose that said amounts were applied annually to the reduction of the several amounts owing on the respective shares, and the respective balance remaining due thereon was placed on each passbook. A perusal of the evidence and the findings convinces us that this was the method actually contemplated and followed and the fact that petitioner's books of account did not disclose such application ought not to militate against the plain intention of all parties concerned. Haugh & Keenan Storage & Transfer Co. v. Heiner (D. C.) 20 F.(2d) 921; Corn Exchange Bank v. United States (C. C. A.) 37 F.(2d) 34. Regardless of what petitioner's books disclosed it was bound to make the application as shown by the passbooks, for it was the intention and agreement so to do.

Respondent calls our attention to the facts that the lease agreement refers to tenant stockholder's monthly payments as rentals and designates no time when they shall cease, and he suggests that those facts lend support to his contention that petitioner was organized for profit. Rentals are quite generally fixed at a sum sufficient to provide a fair return upon the value of the property, over and above the expense of maintaining it. In the instant case, however, there was no return whatever to petitioner in excess of the expenses, except the amounts which it was bound to apply upon the common and preferred stock, and in this respect it was acting as a mere conduit, without remuneration except its expenses, in performing the promise it had made to the tenant stockholders. See Central Life Assurance Soc., Mut. v. Commissioner (C. C. A.) 51 F.(2d) 939. Regardless of the form by which petitioner characterized those monthly payments, a consideration of their substance convinces us that they were not rents, and especially is this true with respect to the portions of those payments which were placed as credits upon the common stock. See Weiss v. Stearn, 265 U. S. 242, 44 S. Ct. 490, 68 L. Ed. 1001, 33 A. L. R. 520; Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570; Industrial Cotton Mills Co. v. Commissioner (C. C. A.) 61 F.(2d) 291; Tulsa Tribune Co. v. Commissioner (C. C. A.) 58 F.(2d) 937.

Notwithstanding the uncertainties which exist in the articles of incorporation and the lease agreements, those instruments should be given a reasonable interpretation in arriving at the intention of the interested parties. It is true that there is no time designated when the monthly payments shall cease, but it is not reasonable to suppose that the parties intended that a tenant stockholder's payments should continue beyond the time when he had paid for his common stock in

compliance with the terms of the agreement. Any other construction would frustrate the very purpose for which petitioner was organized and that of the statute under which it was incorporated.

Respondent contends that petitioner's entity as a corporation must be preserved, and on that premise he insists that all funds received by it, less the amounts deducted for expenses, must be considered as profit to petitioner out of which the distributions to the stockholders were to be made, and hence is taxable as income to petitioner. We quite agree that ordinarily the entity of a corporation should be recognized and preserved, but if by so doing the plain and lawful intention of the parties will become frustrated and of no effect, we conceive it to be the court's duty to have regard for the substance of the transactions rather than to the form, and to grant such relief under the law and the facts as will preserve and give effect to the intentions of the parties. Conceding that the monthly payments constitute income to petitioner, yet, to the extent that they exceeded the expenses and the amount used for the redemption of the preferred stock and the payment of dividends thereon, those funds were, or should have been, applied to the payment of tenant stockholders' common stock. Hence they are to be considered as capital contributions and not as profit to petitioner within the meaning of the statute. A corporation can not receive profit from the sale of its common stock sold at par, or by reason of the receipt of capital contributions from its stockholders. Articles 66 and 67 of Regulations 74, Revenue Act of 1928.

It is further contended by respondent that the funds from which the dividends on the preferred stock were paid must in any event be considered as profit to petitioner. With that contention we are not in accord. In Jones Syndicate v. Commissioner, 23 F. (2d) 833, this court held that the holders of stock certificates to evidence their transactions with the company may be in fact creditors and not stockholders, and that each case presenting such question must be determined from its own facts. In that case preferred stock had been issued for the purpose of circumventing the usury statute of Illinois, and the court, looking to the substance of the transaction rather than to the form in which it was expressed, held that the dividends thereon were in fact interest and in violation of the statute. On a similar state of facts a like ruling was made by the Circuit Court of Appeals for the First Circuit in Wiggin Terminals, Inc., v. United States, 36 F.(2d)

893, 898. There the court said, "If it be shown that dividends paid are, according to the intent of the parties, in fact interest, and the stock on which the dividends are paid is merely held by the creditor as security, it makes no difference what the reason was for paying in that form. The courts look to the real character of the payment, and construe the statute liberally in favor of the taxpayer." In the instant case there was no attempt to circumvent any statute by issuing the preferred stock, but we see no reason why the presence of such an attempt should be required in order to give petitioner the benefit of the principle announced in those decisions. That principle seems to be based primarily upon the intention of the parties rather than upon any illegal method by which that intention was effected. The method employed in those cases was evidence of the intention.

The facts in the instant case disclose a laudable enterprise for furnishing at cost much needed homes for working men. Much more money was needed for that purpose than they were then able to furnish and it was quite apparent that the necessary amount could not be raised upon the individual credit of the working men. The desired result was accomplished by an issue of preferred stock which provided for annual five per cent. cumulative dividends. Public spirited men were informed of the plan and were solicited to purchase the preferred stock. The approach for subscriptions was made on the ground that the project was a public or civic enterprise. It was explained that the project was not a money making scheme but an attempt to bring employers and employees together on common grounds in order to eliminate profit and waste. Subscriptions thereto were not sought as a gift, nevertheless subscribers were told not to consider the same as an investment, and that the project was to be on a non-profit basis with the entire benefits accruing to the home owners in the form of reduced cost of their homes. It was under those circumstances that the money was readily secured and the stock was issued, and under those facts we are constrained to hold that the return on the preferred stock should be considered as interest rather than dividends. If the so-called dividends upon the preferred stock and the payments upon the common stock are to be considered as profits to the taxpayer, then the intention of the parties and the object of the organization will be defeated. We are convinced that under the facts here presented petitioner was not organized for profit and that none accrued to it.

That petitioner was operated exclusively for social welfare we think there can be no doubt. It was contemplated that the same opportunity should be extended to all working men who might desire it and who could comply with the terms required. As a result of the plan one hundred and five homes were constructed for that number of families and at a minimum cost. That indeed was social service and it constituted the exclusive business of petitioner. We think that petitioner was a civic organization within the meaning of the statute, and even though it were conceded to be otherwise, we are of the opinion that it received no profit within the meaning of the statute.

The orders of the Board of Tax Appeals are reversed, and the cause remanded for further proceedings not inconsistent with this opinion.