## PACIFIC SOUTHWEST REALTY CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10037.

Circuit Court of Appeals, Ninth Circuit.

June 8, 1942.

Claude I. Parker, John B. Milliken, and Bayley Kohlmeier, all of Los Angeles, Cal. (L. A. Luce, of Washington, D. C., of counsel), for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Joseph M. Jones, and Frank Ready, Sp. Assts. to Atty. Gen., for respondent.

Before DENMAN, STEPHENS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

Petitioner, a Delaware corporation doing business in California, seeks review of a decision of the Board of Tax Appeals denying deductions from its gross incomes for the calendar tax years 1936 and 1937 (a) of dividends declared and paid out by it to its preferred stockholders during said years; (b) for the discount at which its preferred stock was sold, and (c) for the premiums paid on the redemption of the stock.

(a) *Taxpayer's payment of moneys to stockholders declared and paid to them as dividends.*

The securities upon which the moneys were paid out by the taxpayer were Cumulative Preferred Serial Stock issued under provisions of taxpayer's certificate of incorporation. They were drawn in the customary form establishing such a relationship between a stockholder and its corporation. They were required to be redeemed at the end of a fixed period of years for their $100 par value and any unpaid accumulated dividends. The unpaid dividends did not bear interest. They provided a quarterly dividend payable out of profits in the aggregate annual amount of 6½% for one serial issue and 5½% for another.

In the event that profit was not made and the quarterly dividend not paid, the holders of the preferred shares, who otherwise had no voting rights, acquired all of the voting rights of the stockholders and could assume the control of the corporation and through the ordinary corporate processes compel the declaration and payment of the dividend. The preferred stockholders so controlling the corporation had no power to pay the quarterly dividends otherwise than by this corporate process of declaration thereof from profits then existing. This power was never invoked and all of the dividends paid in the tax years in question were declared and paid in usual corporate procedure by the action of the board of directors.

■ It would thus appear that the dividends so paid fall within the provisions of the Revenue Act of 1936 which are controlling for the two years in question. That act defines a dividend of a corporation to be a "distribution" "out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year." Revenue Act 1936, Section 115, 26 U.S.C.A. Int. Rev.Acts, page 868.

Treasury Regulations 94 for the Revenue Act of 1936 treats dividends on preferred stock as *not* interest, as follows:

"Art. 23 (b)-1. Interest.— * * * So-called interest on preferred stock, which is in reality a dividend thereon, cannot be deducted in computing net income. * * *."

■ The next Revenue Act, of 1938, § 115, 26 U.S.C.A. Int.Rev.Acts, page 1055, contains the same definition of a dividend so far as pertinent here. Regulations 94, Art. 23 (b)-1. Interest for the 1938 act has the same provision treating the preferred dividend as not interest. The regulation thus has the force of law. Commissioner v. Laguna Land & Water Co., 9 Cir., 118 F.2d 112, 113; Helvering v. Winmill, 305 U.S. 79, 83, 59 S.Ct. 45, 83 L.Ed. 52; Helvering v. R. J. Reynolds Tobacco Co., 306 U.S. 110, 116, 59 S.Ct. 423, 83 L.Ed. 536.

■ A taxpayer claiming as a deduction the moneys so declared and paid as a dividend has the burden of "showing that the deduction clearly falls within some deduction provision of the taxing act." White v. United States, 305 U.S. 281, 292, 59 S.Ct. 179, 83 L.Ed. 172.

Taxpayer attempts to maintain this burden by a claim that the preferred serial stock was in fact not preferred stock at all but a mere evidence of an indebtedness. It bases this claim on a provision of its certificate of incorporation and of the stock issued pursuant to it that in the event that at the maturity period of the stock, when the corporation is required to exercise the corporate process of redemption, it fails to redeem, the stockholder thereafter has the right of a general creditor to sue for the principal value of the stock and for any accumulated unpaid dividend.[1]

This general creditor's right after fail-

---

[1] The provision is as follows:

"In the event that the corporation *shall fail to redeem said preferred stock* at the time and place herein and/or in said resolution herein authorized, the holders of said preferred stock shall have the *right to enforce payment of the par value* of said preferred stock so agreed to be redeemed, together with the amount of any unpaid, accrued, or accumulated dividends thereon, together with the premium, if any, *to be paid on such redemption, the same as on any unconditional claim or debt against the corporation,* and upon payment thereof the rights of the holders thereof as stockholders of this corporation shall cease and determine and said preferred stock so paid shall be appropriately cancelled upon the books of this corporation and said stock shall not be reissued." (Emphasis supplied.)

ure of redemption by the corporate process never arose, for, as stated, all the quarterly dividends were paid for each quarter and all of the outstanding preferred stock was redeemed by the process of redemption in the two tax years in question.

The taxpayer claims that although all the moneys were paid at each quarter in pursuance of the corporate process, and although the quarterly dividends so could have been paid quarterly only by that process, and could become ordinary general creditor's debts only years later by the failure of the corporate process of redemption, during which delayed period they bore no interest,—nevertheless, because, in addition to the stockholder's corporate process rights under which all the money was paid him, he had in the event of failure of that process the right to sue as a general creditor, the security was in effect no more than a promissory note or debenture.

■ We are unable to follow this reasoning. A taxpayer may arrange his business transactions so they may or may not be taxable under the phraseology of the taxing act. If so arranged in a form which is or is not taxable, it is no argument for or against a tax exemption that it might have been arranged in some other way. Commissioner v. Kolb, 9 Cir., 100 F.2d 920, 926, 927.

Here the taxpayer arranged its business so it was obligated to pay the quarterly dividends only by a distribution to the holders, of a dividend declared "out of the surplus or net profits of the business of the corporation." This is exactly what the Revenue Act of 1936 and the Regulations quoted above define as a corporate dividend which cannot be deducted in computing net income as "so-called interest on preferred stock."

In our opinion the taxpayer has not shown that its claimed deductions "clearly falls within some deduction provision of the taxing act." On the contrary, it clearly appears to us that the moneys paid in the tax years were declared and paid as a dividend in the usual relationship of stockholder to the corporation and that the taxpayer is not entitled to deduct them from its gross income.

■ The taxpayer claims this was not its intent in creating the preferred stock. But the evidence shows the exact contrary. In the circulars to the subscribers to the stock issue they were advised of the taxpayer's intent and purpose by its following statement: "In opinion of Counsel, exempt from normal Federal Income Tax and exempt from Personal Property Tax in California."

At the time this declaration of intent and purpose was made dividends to stockholders were exempt from the normal federal income tax, whereas interest paid them was not exempt from such tax. Section 25, Revenue Act of 1928, 26 U.S.C.A. Int.Rev.Acts, page 360.

Taxpayer relies on two cases decided by this court, Commissioner v. Proctor Shop, 9 Cir., 82 F.2d 792, 794, and Commissioner v. Palmer, Stacy-Merrill, Inc., 111 F.2d 809, 810. In both these cases we held that the securities issued by the tax paying corporation were "merely held by the creditor as security," and that "dividends paid are, according to the *intent of the parties*, in fact interest." Commissioner v. Proctor Shop, 9 Cir., 82 F.2d 792, 794.[2]

In the Proctor Shop case the instrument was called Debenture Preference Stock and in the Palmer, Stacy-Merrill case Preferred Stock. In the latter case we held that certain subsidiary findings of the Board of Tax Appeals showed that "the parties intended the certificates to be certificates of indebtedness." [111 F.2d 810.] Here the petitioning taxpayer itself declared its intent that the dividends on the preferred stock were not to be deemed indebtedness but stock dividends not subject to the "normal Federal Income Tax."

Other cases cited by the taxpayer are clearly distinguishable. The bonds in Commissioner v. O. P. P. Holding Co., 2 Cir., 76 F.2d 11, bore "interest," specifically so called, and the payments held deductible were made not as a dividend

---

2 " '* * * On this the designation of the instrument issued by the corporation, while not to be ignored, is not conclusive, * * *. The real intention of the parties is to be sought and in order to establish it evidence aliunde the contract is admissible. * * * If the evidence establishes *"that dividends paid are, according to the intent of the parties in fact interest*, and the stock on which the dividends are paid *is merely held by the creditor as security*, it makes no difference what the reason was for paying it in that form." ' " (Emphasis supplied.)

but as an ordinary interest payment. In the instant case only by the corporate process of making a profit and declaring a dividend were the payments made.

The anomalous "guaranteed dividends" of Helvering v. Richmond, F. & P. R. Co., 4 Cir., 90 F.2d 971, bear no resemblance to the dividends here declared and out of earnings. The guaranteed dividends were payable whether earned or not. What was determined there was that an amount, *not declared as a dividend,* paid to perform the contract for the amount of the so-called "guaranteed dividend," was interest and deductible as such.

In Commissioner v. J. N. Bray Co., 5 Cir., 126 F.2d 612, the "interest" bearing Debenture Preferred Stock gave the holder a right to "cumulative interest without directors' declaration." The payments made were not held to be made out of profits. Hence they did not fall within the definition of dividends of the Act of 1936 and the question here to be decided was not passed upon.

We hold that the moneys paid out by the taxpayer on its 5½% and 6½% Cumulative Preferred Serial Stock were dividends and not deductible from its gross income.

(b) *Discount expense.* It is stipulated herein that petitioner's securities designated 5½% Cumulative Preferred Serial Stock were issued and sold at a discount and that if said discount is deductible $1,833.26 was allocable to 1936 and $31,275.39 was allocable to 1937.

■ Since, as above held, the security sold by the taxpayer was intended to be and was in fact a preferred stock, and since they were redeemed by the corporate process of call and redemption, and hence the condition precedent to the debtor-creditor relationship arising in the event of a failure to call and redeem never arose, we hold that the discounts on the issue of the securities were for preferred stocks and not for a bond, note or certificate of indebtedness.

(c) *Redemption at 105% of the par value of the stock.*

As stated, the 6½% and 5½% Cumulative Preferred Serial Stock were redeemed in the tax years in question. It was stipulated that "during the year 1936 petitioner redeemed and retired all of its then outstanding securities designated 6½% Cumulative Preferred Serial Stock for the face value thereof plus a premium of $182,025.00" and that "During the year 1937 petitioner redeemed and retired all of its then outstanding securities designated 5½% Cumulative Preferred Serial Stock for the face value thereof plus a total premium of $20,000.00."

These redemptions were made in the usual corporate process, here a thirty day notice of redemption given by mail to the stockholders of record and by publication and by the deposit of the redemption moneys at the noticed place of redemption.

■ Since the moneys were paid pursuant to the corporate process and not upon an indebtedness arising from the failure to redeem, we hold that the premiums paid on redemption were upon an obligation of the corporation, as corporation, to the stockholder, as its stockholder, and that the premiums cannot be deemed as if paid in the discharge of a bond or promissory note or certificate of indebtedness.

The decision of the Board of Tax Appeals that none of the claimed deductions is permitted under the taxing act is affirmed.

Affirmed.

HEALY, Circuit Judge (concurring).

On principle, I am not able to distinguish this case from Commissioner v. Palmer, Stacy-Merrill, Inc., 9 Cir., 111 F.2d 809. The distributions there held to be deductible as interest were made through the "corporate process" of declaring dividends out of profits. I concurred somewhat doubtfully in that decision on the ground that this court was committed by Commissioner v. Proctor Shop, Inc., 9 Cir., 82 F.2d 792, to the view that the actualities of the situation were to be looked to in determining whether corporate distributions, whatever called, were true dividends or whether they were in fact interest on indebtedness and therefore deductible as an expense.

The securities in the two cases mentioned, and in this case, are hybrids. If they had been denominated "bonds" rather than preferred stocks, I apprehend that nobody would contend that they were not true evidences of debt or that the returns paid thereon were anything other than interest. Cf. Commissioner v. Columbia River Paper Mills, 9 Cir., 126 F.

2d 1009. However, a corporate taxpayer has no good reason to complain if issues which it calls preferred stock are for tax purposes treated as such by the Commissioner, particularly where, as here, the corporation has theretofore customarily treated the payments as dividends in making returns of its taxable income; and where it has advised investors that, in the opinion of counsel, the returns therefrom are dividends and therefore exempt from tax. In such circumstances the corporation, having deliberately made its bed, may with propriety be required to lie in it.