## COMMISSIONER OF INTERNAL REVENUE v. MERIDIAN & THIRTEENTH REALTY CO.

### No. 7978.

Circuit Court of Appeals, Seventh Circuit.

Nov. 5, 1942.

J. P. Wenchel and Roy N. McMillan, both of Washington, D. C., Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Arthur A. Armstrong, Sp. Assts. to Atty. Gen., for petitioner.

Merlin M. Dunbar and Lucien L. Dunbar, both of Indianapolis, Ind., for respondent.

Before EVANS, MAJOR, and KERNER, Circuit Judges.

EVANS, Circuit Judge.

Whether a corporate distribution was a dividend or an interest payment, is the major issue on this appeal which involves Federal income taxes. The M. & T. Co., made an $1,800 payment in 1936, which it claims was interest on its indebtedness, but which the Commissioner asserts was a dividend on preferred stock. The Board of Tax Appeals concluded that the payment was one of interest on indebtedness, and therefore deductible Sec. 23(b)[1] of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev. Acts, page 827, and held that the taxpayer had overpaid its income tax by $234.

A second question is the propriety of an allowance, by the Board, of a credit, in determining the undistributed net income, which credit was based upon a finding that the Company's funds were not available for distribution as dividends, because of a contract limitation imposed upon the Company in 1922.[2]

The facts are free from dispute—rather the problem is the construction of documents[3] to ascertain the real intention of the parties as to the nature of the interest.

---

[1] "All interest paid or accrued within the taxable year on indebtedness" (shall be deductible).

[2] Sec. 26. Credits of Corporations.

In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

*       *       *       *       *

(c) *Contracts Restricting Payment of Dividends.—*

(1) *Prohibition on payment of dividends.*—An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by a corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. * * *

(2) *Disposition of profits of taxable year.*—An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. * * * 26 U.S.C.A. Int.Rev.Acts, page 836.

[3] The underwriting agreement:

"So long as any of said preferred stock shall remain outstanding, said Realty Company shall: (a) Pay no salaries to its officers and no dividends on its common stock, except after there has been first set aside, as surplus, an amount equal to the preferred stock obligations for the next succeeding twelve months; * * * (d) Not transfer, convey or encumber said real estate; * * * (g) Not incur, after the completion of said new improvements, any floating indebtedness in excess of $5,000 * * *."

The preferred stock certificates contained this provision:

"On liquidation of the Company, the holders of the shares of preferred stock shall be entitled to receive the par value of such shares, plus all accumulated dividends, and no more, before any sum whatever shall be paid upon the common stock."

The Articles of Association of the Company provided that the capital stock should not be increased without the written consent of all the preferred stockholders, and also provided:

"The holders of the shares of preferred stock shall be entitled to receive cumulative dividends on the par value of such shares at the rate of * * * 6% per annum, payable quarterly, before any dividend shall be paid on or set aside for the benefit of the common stock. On liquidation of the Company, the holders of the shares of preferred stock shall be entitled to receive the par value of such shares, plus all accumulated dividends, and no more, before any sum whatever shall be paid upon the common stock. * * * And the Company shall, out of its earnings or through the proceeds of the sale of additional common stock, redeem its outstanding preferred stock at the par value thereof, plus all accumulat-

which the "preferred" stockholders held in the corporation.

The Company was organized in Indiana in 1922 for the purpose of erecting and owning a single building, a large building, in the City of Indianapolis. It entered into an underwriting agreement to finance the erection of the building, and, pursuant to the agreement, issued what was called "preferred" stock, of 4,250 shares of $100 par value each, and 2,000 shares of common stock.

The preferred stock had definite maturity dates. The Company, on December 31, 1936, retired $20,000 of the stock, and there then remained unretired, only $10,000.

Although the quere is simple, i. e., Is the relationship that of creditor or stockholder of a corporation? its determination may often be difficult because it is the result of adding and weighing several elements of a situation some of which may give rise to conflicting inferences. Precedents[4] are abundant, but because of the widely-varying fact bases upon which the conclusions are reached, they serve only as guides. Many are the criteria[5] named to aid in the determination. Sometimes a particular one is called decisive,—or the most important test,—sometimes a combination of the elements sways the determination.

---

ed dividends, at such time or times as may be fixed in the certificates issued therefor."

The preferred stock certificate also provides that:

"Upon failure of the company to comply with all the obligations and agreements herein contained, the shares of stock represented hereby shall, at the option of the holder, be immediately redeemable, and if the company shall fail on demand to redeem the same, then the holder thereof shall be entitled to require the liquidation of the company and stockholders in the order provided by law. * * *"

[4] United States v. South Georgia Ry. Co., 5 Cir., 107 F.2d 3; Brown-Rodgers-Dixson Co. v. Com'r, 4 Cir., 122 F.2d 347; Com'r v. Schmoll Fils Ass'd, 2 Cir., 110 F.2d 611; Com'r v. Plamer, Stacy-Merrill, Inc., 9 Cir., 111 F.2d 809; Dayton & Mich. R. Co. v. Com'r, 4 Cir., 112 F.2d 627; Kentucky River Coal Corp. v. Lucas, D.C., 51 F.2d 586; Com'r v. Proctor Shop, Inc., 9 Cir., 82 F.2d 792; Com'r v. O. P. P. Holding Co., 2 Cir., 76 F.2d 11; Helvering v. Richmond R. Co., 4 Cir., 90 F.2d 971; Com'r v. Bray Co., 5 Cir., 126 F.2d 612; Fruit Growers Supply Co. v. Com'r, 9 Cir., 56 F.2d 90; Pacific So. W. Co. v. Com'r, 9 Cir., 128 F.2d 815, decided June 8, 1942; Riverdale Ass'n v. Com'r, 9 Cir., 48 F.2d 711; Title Guarantee & Trust Co. v. United States, D.C., 49 F.2d 641; Arthur R. Jones Syndicate v. Com'r, 7 Cir., 23 F. 2d 833; Finance & Investment Corp. v. Burnet, 61 App.D.C. 78, 57 F.2d 444; Garden Homes Co. v. Com'r, 7 Cir., 64 F.2d 593; Elko Lamoille Power Co. v. Com'r, 9 Cir., 50 F.2d 595; Angelus Bldg. & Inv. Co. v. Com'r, 9 Cir., 57 F. 2d 130; Jewel Tea v. United States, 2 Cir., 90 F.2d 451, 112 A.L.R. 182; Fidelity Savings & Loan Ass'n v. Burnet,

62 App.D.C. 131, 65 F.2d 477; In re Culbertson's, 9 Cir., 54 F.2d 753; Helvering v. Richmond, F. & P. R. Co., 4 Cir., 90 F.2d 971. See, also, Comment in 52 Harvard L.Rev. 1363, and Warren v. King, 108 U.S. 389, 2 S.Ct. 789, 27 L.Ed. 769.

[5] These criteria might be enumerated as follows:

Fixed maturity; payment of dividends out of earnings only; cumulative dividends; participation in management; whether unpaid dividends bear interest; right to sue in case of default, and whether status is equal to, or inferior to that of regular corporate creditors; nomenclature used in the documents; intent of the parties.

The Board carefully considered these criteria and stated:

"There are certain facts in this case which must be given due consideration but do not serve to determine the issue. These include, on the one hand, the use of the words 'preferred stock' and 'dividends,' the subordination of the rights of the preferred stockholders to those of general creditors, and, on the other hand, absence of voting rights in the preferred stock. Commissioner v. O. P. P. Holding Corporation, 2 Cir., 76 F.2d 11; Wiggin Terminals, Inc., v. United States, 1 Cir., 36 F.2d 893; Commissioner v. Proctor Shop, Inc., 9 Cir., 82 F.2d 792, affirming 30 B.T.A. 721. But this preferred had other and more significant characteristics. Each share had a fixed maturity date upon which it became payable; the common was held by nominees for the protection of the preferred; the holder of a share of preferred could enforce payment of the entire sum due as a debt in case of default; and the payment of the 6 percent was not dependent upon profits, but was payable and could be demanded in any event."

We cannot agree with the Board. Our conclusion is that the legal status here involved was that of a preferred stockholder, and not that of a creditor.

■■ We feel impelled so to conclude, for numerous reasons, chief of which is that most of the attributes which are here claimed to be inherent in, and only compatible with, the creditor status, were here created in order to comply with, and follow, the Indiana statutes[6] relative to the issuance of preferred stock. They are therefore not at all indicative of intention of the parties to create a debtor-creditor relation. The intent of the parties in the establishment of the relation is of extreme importance, and where, as here, there is a simple explanation for the existence of provisions which might otherwise be associated with a creditor relationship; which explanation disproves that relationship, the ambiguous provisions lose most, if not all, of their weight.

■ We have cited the Indiana Statute solely to aid in the interpretation of the documents under consideration. We are fully cognizant of the holding of the Court in the case of United States v. Pelzer, 312 U.S. 399, 61 S.Ct. 659, 85 L.Ed. 913, where it was held that Federal tax laws are to be construed with a national uniform view point and not according to individual state constructions.

We have no such extreme case as was presented in Arthur R. Jones Syndicate v. Commissioner, 23 F.2d 833, a case before this court, where there was obviously a misnomer of the parties' relationship in order to evade a usury statute. It was certain, there, that the parties called the obligation a preferred stock because they couldn't effect their illegal purpose otherwise. We believe the parties in the instant case intended the corporate certificate, by them termed "preferred stock," to be just that.

■■ It is often said that the essential difference between a creditor and a stockholder is that the latter intends to make an investment and take the risks of the venture, while the former seeks a definite obligation, payable in any event. But this variant in the relationship—while sharp in the case of a common stockholder and a bondholder—is less wide and distinct in the case of the preferred stockholder and the bondholder. The preferred stockholder has fortified his security with more safeguards than the common stockholder enjoys—and has deprived himself of some of the nebulous and speculative rights of the residuary claimant which the common stockholder enjoys. But, though the preferred stockholder's status is more secure, he has not quite achieved the protection which a creditor or bondholder enjoys, for he is subject to that very creditor's prior right to complete satisfaction of his obligation, in the distribution of the company's assets. In re 620 Church Street, 299 U.S. 24, 57 S. Ct. 88, 81 L.Ed. 16.

■ Important is the dispute between the parties over the preferred stockholder's asserted right, in the instant case, to pay-

---

[6] Laws of Indiana, 1921, Chap. 35, Sec. 15.

"Every corporation shall have power to issue preferred stock but only in accordance herewith. Such preferred stock shall not exceed double the amount of the common stock, and shall have no right to vote in stockholders' meetings and shall not participate in the management of the corporation, but it may be preferred only as to sharing in the assets and profits and only as far as provided in the articles of incorporation, and it shall be lawful for any such corporation to provide in its articles of incorporation for such preferred stock, and it shall specify in such articles the extent to which such stock is preferred as to assets or profits, but the interest of such stock in the assets and profits of the corporation shall at all times be subsequent and junior to the rights of creditors. Such preferred stock may be redeemable on such terms as may be named in the articles of incorpora-

tion, and all the conditions governing such stock shall be named in the certificate * * * therefor."

The Act of 1921 was substantially amended in 1923 (Acts 1923, c. 181, p. 529) to provide (1) that the preferred stock might be designated as cumulative or non-cumulative, (2) interest not to exceed 8%; (3) permitted priority to preferred stock in distribution of assets. It retained the provision, "The rights of creditors shall, at all times, be superior to the rights of holders of preferred shares." Sec. 4836, Burns Ann.Ind.Stats., 1926. The Act of '23 also provided against the conveyance of corporate real estate as long as the preferred stock was outstanding without their written consent. Sec. 4846 provides that "no corporation shall declare or distribute any dividend to preferred stockholders or to common stockholders except from the profits earned by the business of the corporation."

ment of his dividend in any event or whether his right to dividends was restricted to earnings. This has a direct relation to the character of the right involved. A creditor has a right to be paid whether or not his debtor earns anything, but, under the Indiana statute quoted in the margin, a stockholder has no such absolute right to payment of dividends.

■ A reading of the statute and the above-quoted documents convinces us that the right to pay preferred stock dividends was limited to payment out of earnings. True, if dividends remain unpaid, and there be (a) a liquidation of the company, and (b) there be sufficient assets to meet regular creditors' obligations, then (c) the preferred stockholder is to receive his dividends from the assets before the common stockholders receive anything. That is but the usual right of a preferred stockholder. It is not support for a holding that preferred stock dividends are payable even though there be no earnings.

The Articles of Association provide that the preferred stockholder "shall be entitled to receive cumulative dividends * * before any dividend shall be paid on * * the common stock." Further, it says that " * * the Company shall, out of its earnings or through the proceeds of the sale of additional common stock, redeem its outstanding preferred stock * * plus all accumulated dividends. * *." The underwriting agreement contains a similar provision—the preferment of the preferred stockholder over officers' salaries and common stockholders' dividends. It provides, to quote the exact language, that "so long as any of the preferred stock shall remain outstanding * * (the) company shall pay no salaries to its officers and no dividends on its common stock, except if there has been first set aside as surplus an amount equal to the preferred stock obligations for the next succeeding twelve months." A provision which withholds salaries or common stock dividends to protect preferred stockholders affords no support for a contention that preferred dividends are payable regardless of earnings.

■ Stockholders have no absolute right to dividends until they are declared. A creditor has a right to his interest in any event. The provision of the preferred stock certificate, which grants the holder thereof the right to require liquidation of the company for failure to comply with its obligations and agreements cannot be construed to give the right to require liquidation for failure to pay a quarterly dividend, but is limited to the company's failure to redeem preferred stock at maturity. It would not apply to the company's failure to pay quarterly dividends, if no earnings were available therefor.

We are impressed by the logic of the Ninth Circuit's decision in Pacific Southwest Realty Co. v. Commissioner, 128 F.2d 815 (in which case—later than the instant one—the Board held the presence of a maturity date for preferred stock did not establish a creditor relationship out of a designated stockholder status). In that case the preferred stock had a similar (if not stronger) right to force liquidation of the company upon failure to redeem the preferred stock.

In reaching its conclusion the Ninth Circuit gave these reasons for holding the distribution to the preferred stockholders was a dividend and not interest on a debt. (1) The statutory definition of dividends is a distribution out of *earnings*. (2) The oft re-enacted Regulations specifically provide that "interest" on preferred stock, which is in reality dividends, may not be deducted. (3) A taxpayer has the burden of showing the distribution, ostensibly a dividend, is not what it purports to be. (4) Intent at time of creation of relationship was to make tax exempt status (dividends were then exempt from normal income tax liability).

The Pacific Southwest case, supra, bears close semblance to the instant facts, and its logic is equally applicable to the present case.

■ Great reliance is placed upon the fact that the stock had a definite maturity date, comparable to a creditor's obligation, which also has a definite date for payment. This factor may be considered, of course, but it is not conclusive. In some situations it yields readily to contrary inferences. Evidently the Board (see Pacific Southwest case, supra) itself does not consider this factor as an infallible indication of creditor relationship. Again we cite the fact that the Indiana statutes were cognizant of a maturity date as a normal feature of preferred stock and permitted its inclusion in preferred stock issues. It is reasonable to expect a company, which had bound itself to pay cumulatively a high rate of return on its preferred stock, and also provide for its retirement should pro-

tect itself by limiting such a heavy obligation to a specified period of time.

■ The element of statutory and contractual subordination of this preferred stock to rights of ordinary creditors, while not decisive, bears real weight, when coupled with the other facts above discussed. In the margin we have quoted an enlightening discussion of this complicated subject, appearing in Paul and Merten's "Law of Federal Income Taxation."[7]

■ In passing upon the nature of this corporate obligation, we are considering an "ultimate finding" (Helvering, Commissioner, v. Tex-Penn Oil Co., 300 U.S. 481, 57 S.Ct. 569, 81 L.Ed. 755),—in effect, it is a conclusion of law. The question, whether a particular obligation is a debt or a stock interest within the meaning of the Revenue Act, must be determined in the light of all the facts. In the instant case the facts were all documentary. There was no oral testimony on this issue. Therefore, we believe it to be our duty to study all the documents and determine, in the light of the statute and precedent, whether the statutory provision was meant to

---

[7] In the treatise, "Law of Federal Income Taxation," by Paul and Mertens, there appear two discussions of the difference between interest and dividends, as follows:

"Sec. 24.13. It is frequently important in determining deductibility for income tax purposes, to distinguish between so-called preferred stock dividends and interest, the latter only being deductible. This distinction is not merely a matter of nomenclature, interest is not changed into a dividend by calling it a dividend, or vice versa; and a person who *is* a mortgage creditor is not changed into a preferred stockholder by calling him one. The exact terms of an issue, as expressed in the certificate of incorporation and the stock certificate, and all the circumstances, should be nevertheless consulted. It has been said that the 'recitations' of a document and the 'circumstances and conditions that moved the parties to its execution' may aid in its construction and in the determination of its 'actual nature.' The basic question is whether the so-called preferred stockholders are creditors. Tests in the determination of this question are the question whether the holders of the certificates are entitled to a fixed rate of return, and the question whether they are entitled to share equally with creditors on liquidation. The characteristics of *stock* are a right to participate proportionately in all profits, and in management, and in the distribution of net assets on liquidation; the characteristics of a *note* are a definite obligor, a definite obligee (either by name or designation), a definitely ascertainable obligation, and a time of maturity, either definite or that will become definite. A note may possess other features, such as attorneys' fees, interest and security. The distinction has been made that *interest* is 'compensation for the use of money borrowed' whereas *dividends* represent that part of the earnings paid to the stockholder on his investment which is risked in the enterprise. The facts of cases involving this distinction between interest and dividends are intricate and each case should be consulted for the specific certificate provisions involved. A provision that stock is redeemable at the election of the stockholders upon notice prior to any dividend payments does not make a debt. Neither a provision for optional redemption within a period of years in a preferred stock certificate nor a subsequent contract, will take a payment out of the class of dividends. Question may exist as to the status created by deposits, i. e., * * * Dividends upon so-called debenture stock have been held not to be deductible as interest."

Sec. 8.29. "So-called interest paid to stockholders may be essentially dividends, not interest; as such it may be regarded as a further distribution of profits and as not deductible by the corporation. Where preferred stock and other similar security issues represent not shares of ownership in the corporation, but obligations or debts covering advances placed at the risk of the business, payments made to the holders of the stock or obligations are interest payments and as such deductible. The burden of proof is always upon the corporation to show that an instrument denominated a preferred stock certificate is other than what it purports to be. The name given an instrument is, of course, not conclusive; it will be judged by its terms and legal effect. One of the chief elements distinguishing a loan from stock ownership is that the preferred stockholder is not a creditor of the corporation; while he may be preferred over other stockholders, he does not have an equality with the general creditors in the property of the corporation. It is suggested that 'a corporate creditor is one who has loaned to the corporation money, or its equivalent, usually for compensation or interest, at a fixed rate, to be repaid at a designated time or in a designated manner. The stockholder risks his money in the enterprise."

encompass the particular obligation under consideration. This is not a case where the finding of fact by the Board, supported by substantial evidence, precludes a review of such finding by this court.

II. The second issue concerns the company's right to a credit (on surtax) on undistributed profits, under Sec. 26(c) (1) or (2) for such amount as could not be distributed "as dividends without violating a provision of a written contract * *." The Board held that the instant underwriting agreement with Wild and Co., which provided that "so long as any of said preferred stock shall remain outstanding, said * * company shall (a) pay * * no dividends on its common stock, except after there has been first set aside, as surplus, an amount equal to the preferred stock obligations for the next succeeding twelve months" was such an agreement as provided for in Sec. 26(c), and the company was entitled to the credit.

The Board stated the facts to be that the Company, at the beginning of 1936 (tax year in question), had a surplus, accumulated from *earnings* of prior years, in the amount of $116,174.11 which increased to $133,475.88 at the close of 1936. The surplus was represented by the Company's equity in the realty and not by cash. It is stated the Company had from $3,000 to $6,000 cash on hand at the end of 1936.

We think the Board was in error in holding the underwriting contract prevented the payment of dividends by the corporation, and therefore entitled the Company to a credit.

The decision of Helvering v. Northwest Steel Mills, 311 U.S. 46, 61 S. Ct. 109, 85 L.Ed. 29, helps to clarify the section under consideration. It points out that statutory exemptions are to be strictly and precisely construed. In that case a state statute and the corporate charter were the limiting instrumentalities, and the court held such limitations were not "written contracts" within the statutory provision.

We have, it must be conceded, a "written contract" such as the section speaks of. But we do not have a case where the payment "could not be distributed without violating a provision" of the said written contract.

The contract merely says no officers' salaries or common stock dividends shall be paid "except after there has been first set aside, as surplus, an amount equal to the preferred stock obligations." The only sensible construction of this contractual limitation is that there must be a reserve (surplus) to cover the accruing obligations—but the *time when* such reserve was set up is immaterial.

For instance, in an unusually prosperous year, a reserve surplus to handle two future years' obligations might be set up—in the succeeding year there would be no need to observe the underwriting agreement because compliance had already been achieved.

It is most earnestly argued that, as a practical matter, this Company had not sufficient *cash* to cover this dividend and could not legally borrow and that its surplus was tied up in its sole asset. These may be good reasons for taxpayer not making other preferred stock retirement. But we are here considering an income tax statute which could, and did, provide for exemption from said tax. The only exemption made by the statute is for contractual restrictions, not financial ones (or, as the Supreme Court held, statutory or corporate restrictions). The underwriting agreement did not require the reserve to be cash—merely "surplus," of which the Company already had ample—though allegedly in frozen form.

It is hardly necessary to discuss subsection (2) of Sec. 26(c), in view of our conclusion that the preferred stockholders were not, in reality, creditors. This section has no application, in view of our conclusion against the creditor status of said preferred stockholders.

The decision is reversed.