OPINION. Mulroney, Judge: The first and principal issue before us is whether certain sums paid by petitioner corporation constituted payment of dividends and premium on the retirement of preferred stock within the meaning of section 115 (a), Internal Revenue Code of 1939, or payment of interest on a loan within the meaning of section 23 (b), Internal Revenue Code of 1939. If the former, as contended by the respondent, the payments are not deductible in determining net income. If the latter, as contended by the petitioner, the payments are deductible. We think the petitioner has failed to sustain the burden of proving error in the respondent’s determination. The facts in the instant case are relatively simple. The Lumber Company had approximately 2 weeks in which to close a million dollar timber purchase. In addition to the cash on hand, the Lumber Company had to raise $300,000 cash within that time to close the transaction. It became clear within a few days that a loan could not be obtained through normal banking and investment channels because of the limited time available. Gray was contacted by a broker relative to making the loan and he agreed to furnish the money on certain conditions. Because of his high income tax bracket, Gray made it clear that he did not want to enter anything unless he could get capital gains treatment on any profit he might make. Therefore a plan was proposed and accepted whereby a new corporation (the petitioner) was formed to take over the newly acquired timber tract. Under the plan, the Lumber Company would be issued 2,000 shares of common stock of the new corporation, and Gray would be issued 3,000 shares of preferred stock. The preferred stock would be redeemed at a premium and retired mider conditions as set out in the charter. We do not deem it necessary to recount all of the conditions, restrictions, and privileges listed in the charter pertaining to the stock as that part of the charter is set ont in full in our Findings of F act. The petitioner contends that the sum and substance of all the manipulations between Gray and the petitioner resulted in the creation of a debtor-creditor relationship. Therefore, according to the petitioner, the “preferred stock” certificates held by Gray were mere evidences of indebtedness and any sums expended for the use of the money advanced were properly deductible as interest. The respondent, on the other hand, contends that the relationship created by the transactions related above was that which the parties themselves labeled it — a corporation-stockholder relationship, because of which the petitioner paid nondeductible dividends and premium on the retirement of preferred stock. The basic question whether the payees of money from a corporation are stockholders or creditors and whether the payments constitute dividends or interest turns upon the consideration of all the relevant facts of an individual case. Crawford Drug Stores, Inc. v. United States, 220 F. 2d 292. The basic question has been presented to this and other courts many times under widely varying facts. William Cluff Co., 7 B. T. A. 662; Greensboro News Co., 31 B. T. A. 812; Commissioner v. Proctor Shop, 82 F. 2d 792, affirming 30 B. T. A. 721; Commissioner v. Meridian & Thirteenth R. Co., 132 F. 2d 182, reversing 44 B. T. A. 865; United States v. Title Guarantee & Trust Co., 133 F. 2d 990. Because of the widely varying facts underlying the conclusions reached in these and other cases, the many criteria named in the cases can, at best, serve only as general guides in our determination of the issue in the present case. The cases do agree that the decisive factor is not what the relationship and payments are called, but what in fact they are. United States v. Title Guarantee & Trust Co., supra. In distinguishing between payment of dividends on stock and payment of interest on indebtedness, the determining elements, no one of which is conclusive, but all of which are usually recognized for consideration are (1) the name given to the transactions; (2) the presence or absence of a maturity date; (3) the source of the payments; (4) the remedies of the holder on default; (5) the right of the holder to participate in management; (6) the priority status of the holders as regards general corporate creditors; and (7) the intention of the parties. Crawford Drug Stores, Inc. v. United States, supra; Commissioner v. Meridian & Thirteenth R. Co., supra. In the instant case, every document of the petitioner corporation referred repeatedly to the certificates held by Gray as preferred stock. As we have said, neither the nomenclature used nor any one of the other criteria listed above is conclusive standing alone but each is a factor to be considered. The certificates did not have a definite maturity date. This is another factor indicating that Gray did not make a loan to petitioner but invested in stock. It is a common attribute of a debt that the holder thereof is entitled to interest regardless of earnings on definite dates. Here, dividends were to be paid from earnings only when declared by the corporation. The remedies afforded Gray on default were those of a stockholder and not of a creditor. He could, after a certain period of time, take over the operation of the petitioner through the election of directors and participation in management, but this is a common remedy of a preferred stockholder, not a creditor. Gray, as a preferred stockholder, was preferred only to the common stockholders on liquidation or dissolution, the charter making the preferred stockholders subordinate to general creditors of the corporation. Petitioner argues that Gray forced so many restrictions upon it and gained so many privileges for himself, that Gray was practically a mortgage creditor of the petitioner. As we see it, Gray perhaps drove a hard bargain and gained “as much preference over the common stockholders as the common stockholders themselves were willing to permit” and surrounded himself with as many protective measures as the laws of Virginia would allow. Greensboro News Co., supra. None of the restrictions imposed upon petitioner’s rights to function were inconsistent with the rights of a preferred stockholder. Petitioner places great weight on the “intent of the parties” criterion. It is its argument that it intended to make a loan and Gray, in effect, was merely advancing the money in a transaction that he could label a stock transaction. Obviously, the Lumber Company wanted to make a loan when negotiations began. It is equally obvious that Gray did not intend to make a loan for the reason that he did not want interest, or ordinary income, to be added to his already high ordinary income. Gray expressed interest, in helping the Lumber Company acquire the timber tract, only if the transaction could be put on a capital gains basis. This, Gray insisted upon and this, the Lumber Company agreed to in order to acquire the timber tract. The Lumber Company was apparently forced, by the limited time available to close the timber purchase, to accept the proposition of Gray even though it may not have been to the best advantage of the Lumber Company to do so. The Lumber Company, having decided to accept the terms of Gray, caused the petitioner corporation to be formed. Certainly we cannot say that the petitioner corporation did not intend to issue preferred stock to Gray, since the petitioner corporation would never have been brought into existence had there not been an agreement to issue preferred stock to Gray. All of the criteria named in the cases cited, when applied to the instant fact situation, indicate that Gray was a preferred stockholder of petitioner. Therefore, the sums paid were dividends and premium on the retirement of the preferred stock held by Gray and cannot be deducted. The second issue is whether sums totaling $10,474.17, paid by the petitioner in the taxable year in question and deducted as “professional fees,” were properly deductible. The respondent disallowed the deduction “because it has been determined that the amount * * * represents organizational expenses.’’ The petitioner alleges in its petition that the respondent erred in disallowing this deduction as loan expense and in designating it organizational expense. This is denied by the respondent. Of course the petitioner has the burden of proving error in the respondent’s determination and petitioner has not done so. There was no evidence presented concerning this allegation of error except it was stipulated that payments were made to certain attorneys and a broker totaling $10,474.17. Therefore, the respondent must be upheld on this issue. Decisions will he entered wider Rule 50.