KENA, INC., SUCCESSOR BY MERGER TO WYDELKE, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 100406. Promulgated April 18, 1941.

*Charles W. Crawford, Esq.*, for the petitioner.
*John R. Wheeler, Esq.*, for the respondent.

## OPINION.

VAN FOSSAN : The respondent has pitched his entire argument on the interpretation of the word "interest" as used in section 351 (b) (1) ('A). The petitioner contends that the sum received by it pursuant to the contract with deMauriac was not interest and did not represent "gains from the sale of stock or securities." If such payment is determined to be either interest or gains from the sale of stock or securities, the section automatically applies to the situation before us since the facts of the case bring it within the provisions of the other subsection (section 351 (b) (1) (B)). It is to be noted that, while counsel for petitioner contends the payment was not interest or gains from the sale of stock or securities, he does not venture to suggest an alternative characterization or name.

It is axiomatic that the language used to describe a thing does not determine its character. The contract of December 13, 1932, denominated the amount to be paid to the petitioner as "an additional sum in lieu of interest." The word "lieu" means "place or stead." It does not imply that the character of the payment was different from interest but indicates that the method of computation was

not in accord with the usual method of computing interest, the percentage of profit being employed as a substitute. The contract itself must be examined to determine whether the sum so designated was actual interest or was something else.

Funk & Wagnalls New Standard Dictionary defines interest as "Payment for the use of money, or money so paid; an agreed or statutory compensation accruing to a creditor during the time that a loan or debt remains unpaid, reckoned usually as a yearly percentage of the sum owed."

In *Old Colony Railroad Co.* v. *Commissioner*, 284 U. S. 552, the Supreme Court stated:

And as respects "interest", the usual import of the term is the amount which one has contracted to pay for the use of borrowed money. He who pays and he who receives payment of the stipulated amount conceives that the whole is interest. * * * We cannot believe that Congress used the word having in mind any concept other than the usual, ordinarily, and everyday meaning of the term * * *.

In *Elverson Corporation*, 40 B. T. A. 615, we said:

* * * Interest, as generally understood, means simply the "compensation allowed by law, or fixed by the parties, for the use or forbearance of money, or as damages for its detention"; "the compensation which is paid by the borrower of money to the lender for its use"; "the price or rate of premium per unit of time, paid by the borrower of money to the lender for its use." 33 Corpus Juris 178; *Joseph W. Bettendorf*, 3 B. T. A. 378, 383; Bouvier's Law Dictionary; Webster's New International Dictionary; *Anderson & Co.*, 6 B. T. A. 713, 716. "The usual import of the term is the amount which one has contracted to pay for the use of borrowed money." *Old Colony Railroad Co.* v. *Commissioner*, 284 U. S. 552, 560. Congress apparently used the word in its usual and commonly accepted sense, *DeGanay* v. *Lederer*, 250 U. S. 376, and there is nothing in the legislative history to indicate that it was to be construed otherwise. *Avery* v. *Commissioner*, 292 U. S. 210. (See Report No. 704, Ways and Means Committee, 73d Cong. 2d sess., p. 11, and Report No. 558, Senate Finance Committee, pp. 13, 16.) * * *.

See also *Fall River Electric Light Co.*, 23 B. T. A. 168, and cases there cited.

The contract called the amount delivered to deMauriac a loan and deMauriac acknowledged its receipt as such. DeMauriac promised to repay the loan on a definite date, December 1, 1933. He agreed to pay to the petitioner "in lieu of interest" a sum equal to 80 percent of the net profits of his business earned during the term of the loan. The contract specifically designated the relationship between the petitioner and deMauriac as that of creditor and debtor and meticulously provided that only the principal amount should be repaid and and that the petitioner should share no losses of the business.

The record convinces us that the amount originally delivered to deMauriac and the amount subsequently advanced under the extended

agreement were loans of cash made by the petitioner to deMauriac. The amounts paid for the use of such borrowed money were interest thereon.

It is not essential that interest be computed at a stated rate, but only that a sum definitely ascertainable shall be paid for the use of borrowed money, pursuant to the agreement of the lender and borrower. Except for the usury laws of the several states, there is no limit set upon the amount of interest which may be paid under specific contract between the creditor and the debtor. 30 American Jurisprudence, §5, p. 9; *Edgar B. Terrell*, 7 B. T. A. 773; *Barker* v. *Magruder*, 68 App. D. C. 211; 95 Fed. (2d) 122; *Barker* v. *Receivers*, 88 Ct. Cls. 468; see *United States* v. *Sullivan*, 274 U. S. 259; and *Jones Syndicate* v. *Commissioner*, 23 Fed. (2d) 833.

The lender may forego interest if he chooses. He may agree not to charge interest or to reduce the amount of interest, provided certain events occur. That situation would exist here if deMauriac had made no profits. The possibility that no interest might be payable does not affect the character of the interest when actually paid.

Here the amount in controversy was paid for the use of the primary loan as augmented by additional loans made under the same contractual terms. Consequently, the petitioner derived at least 80 percent of its gross income from interest and is a personal holding company as defined in the statute.

In view of the above holding it is unnecessary to consider whether the amount received by petitioner represented "gains from the sale of stock or securities."

The action of the respondent, in denying the 20 percent credit in computing the petitioner's undistributed adjusted net income subject to surtax, is sustained.

*Decision will be entered for the respondent.*