COMMISSIONER OF INTERNAL REVE-
NUE v. JOHN KELLEY CO.

No. 8426.

Circuit Court of Appeals, Seventh Circuit.

Dec. 21, 1944.

J. P. Wenchel and John M. Morawski, Bureau of Internal Revenue, both of Washington, D. C., and Samuel O. Clark, Jr., Sewall Key, Robert N. Anderson, and Muriel Paul, all of Washington, D. C., and Maryhelen Wigle, Asst. Atty. Gen., for petitioner.

Frank J. Albus, of Washington, D. C., for respondent.

Before EVANS, KERNER, and MINTON, Circuit Judges.

MINTON, Circuit Judge.

The Commissioner of Internal Revenue determined deficiencies in income and excess profits tax against the taxpayer, the John Kelley Company for the calendar years 1937, 1938, 1939. The Tax Court refused to sustain the assessment, and the

Commissioner has petitioned for review. The alleged deficiencies arose from the taxpayer's deduction of payments made on income debentures as interest on indebtedness. The Commissioner contends that the payments were dividends within the meaning of section 115(a) and not interest within the meaning of section 23(b) of the Revenue Act of 1936, Chap. 690, 49 Stat. 1648, 26 U.S.C.A. Int.Rev.Code, §§ 23(b) and 115(a).

■ The sole question presented is whether the payments were interest. There is no dispute as to the facts, and the evidence in the record before us is documentary. Thus a question of law is presented, and its review is clearly authorized by statute. 44 Stat. 110, 26 U.S.C.A. Int.Rev.Code, § 1141(c) (1). Commissioner of Internal Revenue v. Meridian & Thirteenth Realty Co., 7 Cir., 132 F.2d 182, 188.

■ In deciding cases of this kind the various provisions of the instrument evidencing the obligation in the light of the surrounding circumstances in each case determine whether the relationship created is proprietary or that of debtor-creditor. Each case stands on its own feet. As we said in Commissioner of Internal Revenue v. Meridian & Thirteenth Realty Co., supra, 132 F.2d at page 185:

"Precedents are abundant, but because of the widely-varying fact bases upon which the conclusions are reached, they serve only as guides. Many are the criteria named to aid in the determination. Sometimes a particular one is called decisive,—or the most important test,—sometimes a combination of the elements sways the determination."

The following are the pertinent facts. The taxpayer is an Indiana corporation operating a retail furniture store. Its books were kept on an accrual basis. On January 1, 1937, taxpayer had authorized 1,500 shares of no par common stock and 3,000 shares of 6% cumulative preferred stock of $100 par value, of which 1,110 of the common and 1,124 of the preferred were outstanding. The business was a closely held family corporation. All the outstanding common stock was owned by Roy Kelley, his wife, and his sister, Mabel Kelley Ronald. The latter was president of the company, and Roy Kelley was secretary. The preferred stock was all owned either individually or as trustee by Roy Kelley and his sister.

On January 11, 1937, the corporation adopted resolutions authorizing a so-called plan of reorganization. Under this plan, the common stock was changed to $100 par value and increased to 6,000 shares. Twenty year "income debenture bonds" aggregating $250,000 and bearing interest at 8% per annum were authorized. At the same time, and as part of the same scheme, a trust agreement was executed, setting forth the terms upon which the debentures were issued and outlining the powers and duties of the trustee. The trust agreement was signed on behalf of the company by its president, Mabel K. Ronald, and by her brother, Roy Kelley, as secretary. Then they moved to the other side of the table and signed the agreement as trustees. It was all a little arrangement between them. The same people represented both sides of the transaction. This is enough to inspire hesitation in calling it a bona fide trust agreement.

Under the scheme the "income debentures" were exchanged for the preferred stock at $102 per share. Also, for the purpose of raising additional capital to expand the business "in the field of finance," as the resolution recited, the trustees were authorized to sell additional debentures at par, but *only* to the shareholders of the corporation. Mabel K. Ronald and Berdina Kelley, the wife of Roy Kelley, subscribed for $24,408 and $10,944, respectively, of the debentures. They did not pay cash for these debentures, but the subscriptions were charged to the purchasers on the books of the company and were later wiped out by the credit of dividends paid on the common stock held by each.

The dividends of this little corporation, even in these slack business years, were exceptionally good. A cash dividend of $55 per share and a stock dividend of 3½ shares for one was paid on the common stock in 1937. Attention is called to the fact that Mabel K. Ronald who, as a trustee, was obligated to promote the sale of the debentures in order to raise additional capital to expand the business, herself bought some debentures without paying cash for them. Such a transaction did not put a penny of new money into the treasury of the corporation. It may further be observed that in a slack business year such as 1937 a corporation which was able to

pay $55 a share cash dividends and a stock dividend of 3½ shares for one, ought not to have had to pay 8% interest on its debentures. In our opinion, the 8% rate of interest was not fixed with any regard to the money market in 1937 but was fixed to drain off 8% interest on debentures which had retired 6% stock.

The 8% interest on the debentures was payable *only* out of the *net income* of the company. If there was no income, there were no payments, and *defaulted payments did not accumulate*. At liquidation or insolvency, the debenture holders were superior in rank only to the common stockholders, just as were the former preferred stockholders. All other creditors had preference. The preference of the debenture holders over the stockholders meant nothing, because all the debentures were held by stockholders, either individually or as trustees. The debenture holders had no voice in management. That, too, was of little moment, for the same reason.

On the books of the company the income debentures were referred to variously as "stocks," "bonds," and "notes." In the capital stock tax returns for 1938 and 1939, the "debentures" and "debenture notes" were listed as capital stock. They were not reflected as indebtedness in the balance sheets appearing in the income and excess profits tax returns filed by the respondent for 1937, 1938, and 1939, but appeared under the heading, "Capital Stock: Debenture Notes." On most of the checks drawn to make the income payments on the debentures, the nature of the payment was described as "Interest, income debenture stock."

■ While the name given to the document is not controlling[1] it may be persuasive, if consistently used, as indicative of the intent and purpose of the corporation issuing the document. On the other hand, if there has been inconsistent use of such names, it may be considered in determining whether the corporation did what it professed to do.

In 1937, $6,000 was paid as income on the debentures and $12,000 was paid in each of the years 1938 and 1939. The taxpayer deducted these payments as interest on indebtedness pursuant to section 23(b).

■ From this statement of the facts, it becomes apparent that these debentures had every aspect of preferred stock except one: they had a definite maturity date. It is not, however, unusual today for preferred stock to have a maturity or retirement date. In fact, such is authorized by Indiana corporation law. Burns Ind.Stat. Ann.1933, § 25-205. Commissioner of Internal Revenue v. Meridian & Thirteenth Realty Co., supra, 7 Cir., 132 F.2d 182, at page 186, note 6. The presence of a maturity date, however, is not controlling. Kentucky River Coal Corporation v. Lucas, D.C., 51 F.2d 586, 588, affirmed, 6 Cir., 63 F.2d 1007. Especially is this true where, as in the case at bar, debentures were unsecured and were inferior to the claims of any creditor.

■ The scheme to convert the preferred stock into debentures left the debentures resembling preferred stock rather than indebtedness. "In the business world 'interest on indebtedness' means compensation for the use or forbearance of money." Deputy v. Du Pont, 308 U.S. 488, 498, 60 S.Ct. 363, 368, 84 L.Ed. 416. The taxpayer "hired" no money here. Its owners merely swapped papers and wound up in relatively the same position.

■ Stockholders take the risks of a business while creditors must be paid whether the corporation has a net income or not. The distinguishing feature of one is risk, and of the other, security. In the case at bar, the debenture owners were not to be paid in any event but were to be paid only after all other creditors were paid; and the "interest" on the debentures was to be paid only if sufficient net income was earned within the period. Such debentures obviously evidenced risk capital, not creditor capital. In short, it was all a matter of accounting hocus-pocus, guided by a little too clever legal planning which eventuated in a rather flimsy scheme to avoid paying of taxes. As far as we are concerned, it will not succeed.

No case has been decided where the facts so clearly characterized the document as stock. A consideration of cases in the Circuit Courts of Appeals and the District Courts discloses none where noncumulative payments, payable out of earnings

---

[1] "Law of Federal Income Taxes," Merten, § 26.10; Commissioner of Internal Revenue v. Schmoll Fils Associated, Inc., 2 Cir., 110 F.2d 611, 613; Jewel Tea Co., Inc., v. United States, 2 Cir., 90 F.2d 451, 452, 112 A.L.R. 182.

only, have been held to be interest.[2]  Every provision of these debentures is a frequent and authorized clause familiar to preferred stock.  Viewing this transaction from any angle, it has all the aspects of an issue of restricted preferred stock.  In our opinion, payments made on the so-called "debentures" were dividends within the meaning of section 115(a) and not interest on indebtedness.

The judgment of the Tax Court is reversed.

[2] Helvering v. Richmond, F. & P. R. Co., 4 Cir., 90 F.2d 971; Commissioner of Internal Revenue v. Palmer, Stacy-Merrill, Inc., 9 Cir., 111 F.2d 809; Arthur R. Jones Syndicate v. Commissioner of Internal Revenue, 7 Cir., 23 F.2d 833; Commissioner of Internal Revenue v. O. P. P. Holding Corporation, 2 Cir., 76 F.2d 11; Commissioner of Internal Revenue v. H. P. Hood & Sons, Inc., 1 Cir., 141 F.2d 467; Commissioner of Internal Revenue v. J. N. Bray Co., 5 Cir., 126 F.2d 612; Commissioner of Internal Revenue v. Proctor Shop, Inc., 9 Cir., 82 F.2d 792; United States v. Title Guarantee & Trust Co., 6 Cir., 133 F.2d 990; Diamond Calk Horse Shoe Co. v. United States, 40-2 USTC ¶ 9641, appeal dismissed, 8 Cir., 116 F.2d 284.  The only holding to the contrary is a Tax Court memorandum decision, S. Glaser & Sons, Inc., v. Commissioner of Internal Revenue, CCH Dec. 14,006 (M).