GOKEY PROPERTIES, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 65577. Filed August 12, 1960.

*J. Russell Rogerson, Esq.*, and *Miles L. Lasser, Esq.*, for the petitioner.

*John J. Madden, Esq.*, for the respondent.

BRUCE, *Judge:* This proceeding involves deficiencies in income tax of the petitioner for the years and in the amounts as follows:

| Year | Deficiency |
|------|-----------|
| 1952 | $8,394.86 |
| 1953 | 8,190.70 |
| 1954 | 7,546.00 |

The sole issue for decision is whether certain registered gold bonds issued by petitioner in 1938 constitute a genuine indebtedness, so that payments thereon are deductible as interest.

### FINDINGS OF FACT.

The stipulated facts are so found and are incorporated herein by this reference.

The petitioner, a New York corporation with its principal office at 98 Westminster Drive, Jamestown, New York, was incorporated January 13, 1938, and continued in existence until its dissolution in 1955. Petitioner's books were kept on the accrual basis and its income tax returns for the periods herein involved were filed with the collector or district director of internal revenue, Buffalo, New York.

The principal asset of the petitioner was a parcel of land together with buildings thereon, hereinafter sometimes referred to as Gokey Properties, which was bounded by West Third Street, Cherry Street, West Fourth Street, and Mechanics Alley in Jamestown, New York. The structures on this land were erected in 1910 and 1913 and the only business of the petitioner was the rental of this real estate. The property was sold in 1955 for $780,000 and the corporation was liquidated in 1955 following the sale.

Gokey Properties was originally owned by Noah Webster Gokey, who died in the year 1897 leaving two sons and one daughter. Upon his death the property was acquired by his two sons; William N. Gokey, Sr., acquired a five-eighths interest and George F. Gokey, Sr., acquired a three-eighths interest.

William N. Gokey, Sr., died in 1919 leaving five children—William N. Gokey, Jr., Mabel Merritt, Ruth Walters, Helen Dennigan, and Marvin Gokey—each of whom inherited a one-eighth interest subject to the life use of their mother, Harriet Gokey, who died on or about November 8, 1937. Marvin Gokey died June 23, 1930, leaving as his heir his son Robert.

Beginning in 1925 George F. Gokey, Sr., managed Gokey Properties as a partnership between himself and the heirs of his brother, William N. Gokey, Sr. George F. Gokey, Sr., died in April 1936, leaving a last will and testament by which his residuary estate, consisting principally of his three-eighths interest in Gokey Properties, was bequeathed and devised in trust for the support of his widow, Louise M. Gokey, during her lifetime, with distribution to and among his two sons, Noah Webster Gokey and George F. Gokey, Jr. Louise M. Gokey died in 1954. The interests of Noah Webster Gokey, George F. Gokey, Jr., and Louise M. Gokey were held in the name of the Estate of George F. Gokey, Sr., but were considered as being held individually, one-eighth by each of the three parties concerned.

Upon the death of George F. Gokey, Sr., William N. Gokey, Jr., the owner of an undivided one-eighth interest in Gokey Properties, assumed the management of the property on behalf of all the owners thereof. In August 1936 he was removed as manager by the other seven owners, who thought that he was not properly handling the property or the receipts therefrom. William N. Gokey, Jr., had become indebted to the Bank of Jamestown in the sum of approximately $40,000, which was secured by a mortgage upon his interest in Gokey Properties. The bank commenced an action for the foreclosure of the mortgage in 1937 and a receiver was appointed in this foreclosure action.

The other seven owners of Gokey Properties, namely the three children (excluding William N. Gokey, Jr.) and the grandson of William N. Gokey, Sr., and the widow and two sons of George F. Gokey, Sr., fearing that such foreclosure or partition actions might be detrimental to their property interests, decided to buy the interest of William N. Gokey, Jr., and to incorporate their property holdings. After negotiation with the Bank of Jamestown, its interest was purchased for $32,597 and the interest of William N. Gokey, Jr., was purchased for $3,000 and the cancellation of claims which

Gokey Properties held against him.[1] The sums necessary to make these purchases were secured by placing an additional mortgage on the property. William N. Gokey, Jr., and his wife deeded their interest in the property to the petitioner corporation on January 24, 1938, and the remaining seven owners of the property transferred their interests to the petitioner shortly thereafter.

The remaining seven owners of Gokey Properties organized petitioner corporation with an authorized capital of 140 shares of common stock without par value and in a transaction qualifying under section 112(b)(5) of the Internal Revenue Code of 1939 the properties were transferred to the corporation in return for the stock and bonds having a face value of $400,000. Such bonds were unsecured. Each of the seven owners received 20 shares of common stock and a registered gold bond in the face amount of $50,000. Because of delays in securing the mortgage money, the purchase of the interest of William N. Gokey, Jr., had not been completed at the time of the transfer by the other owners of their property interests to petitioner. Accordingly, at the same time that the seven others received their stock and bonds, an additional bond in the face amount of $50,000 was issued in the name of William N. Gokey, Jr. As soon as the money was acquired from the additional mortgage, the bond issued to William N. Gokey, Jr., was returned by him and the sums which had been agreed upon as due to him and to the Bank of Jamestown were paid.

Since the inception of petitioner corporation the seven former owners and transferors of the Gokey Properties have been the stockholders and directors of petitioner.

The bonds issued by petitioner, each of which bore the title "Registered Gold Bond," provided in pertinent part as follows:

GOKEY PROPERTIES, INC., for value received, hereby promises to pay to the registered holder hereof on the 1st day of February, 1963 at its office in the City of Jamestown, State of New York, Fifty thousand Dollars, in gold coin of the United States of America of or equal to the present standard of weight and fineness, and until payment of this bond at maturity, or its redemption as hereinafter provided, to pay at said office interest on said principal sum at such time or times as the Board of Directors of Gokey Properties, Inc., shall determine, and at such rate or in such amount as such Board of Directors shall in each instance specify, but not exceeding in any year the rate of seven per cent per annum.

This bond shall be registered upon the books of the Gokey Properties, Inc., and no transfer except upon such books shall be valid. No transfer of any

---

[1] The discrepancies between these stipulated figures and (1) the cost basis of $35,599.76 reported in Schedule C of petitioner's 1938 income tax return as the cost basis of the bond temporarily issued to William N. Gokey, Jr., in lieu of immediate payment; (2) the amount of $4,000 listed in the purchase agreement between the seven remaining owners and William N. Gokey, Jr.; and (3) the $32,500 offered to the Bank of Jamestown, are unexplained.

bond shall be valid unless made by the registered holder in person, or by his duly authorized attorney, giving the name of the transferee, together with his address, and such registration shall also be shown by an appropriate notation upon the bond.

This bond may be paid or redeemed in full or in part on any date upon thirty days' prior written notice to the registered holder hereof of such intention to pay or redeem the same.

This bond is one of a series of gold bonds of like tenor (except that the amount thereof need not in each instance be the same) aggregating the sum of Four hundred thousand & 00/100 Dollars, made by said company.

None of said bonds constituting this series shall have preference or priority over any other, and all payments shall be applied ratably to all of said bonds.

Interest was paid on the registered gold bonds during the years and in the amounts as follows:

| Year | First quarter | Second quarter | Third quarter | Fourth quarter | Total |
|---|---|---|---|---|---|
| 1938 | $3,850 | $3,850 | $3,850 | $4,900.00 | $16,450.00 |
| 1939 | 4,060 | 3,500 | 3,500 | 8,190.00 | 19,250.00 |
| 1940 | 3,850 | 3,150 | 3,500 | 7,000.00 | 17,500.00 |
| 1941 | 3,500 | 2,500 | 4,500 | 7,000.00 | 17,500.00 |
| 1942 | 3,500 | 3,500 | 3,500 | 9,187.50 | 19,687.50 |
| 1943 | 3,500 | 3,000 | 4,000 | 9,625.00 | 20,125.00 |
| 1944 | 3,500 | 3,500 | 3,500 | 10,500.00 | 21,000.00 |
| 1945 | 3,500 | 3,500 | 3,500 | 10,500.00 | 21,000.00 |
| 1946 | 3,500 | 3,500 | 3,500 | 11,375.00 | 21,875.00 |
| 1947 | 3,500 | 3,500 | 3,500 | 11,375.00 | 21,875.00 |
| 1948 | 3,500 | 3,500 | 3,500 | 11,375.00 | 21,875.00 |
| 1949 | 3,500 | 3,500 | 3,500 | 14,000.00 | 24,500.00 |
| 1950 | 3,500 | 3,500 | 3,500 | 14,000.00 | 24,500.00 |
| 1951 | 3,500 | 3,500 | 3,500 | 14,000.00 | 24,500.00 |
| 1952 | 3,500 | 3,500 | 3,500 | 14,000.00 | 24,500.00 |
| 1953 | 3,500 | 3,500 | 3,500 | 14,000.00 | 24,500.00 |
| 1954 | 3,500 | 3,500 | 3,500 | 14,000.00 | 24,500.00 |

The amount of the interest to be paid for each year was determined at a meeting of the board of directors of petitioner held at the end of such year (with the exception of the year 1938 when the board of directors meeting was held after the end of that year). In the following year the action of the board of directors with respect to the payment of interest for the preceding year was approved by the stockholders.

During the years 1952 through 1954 petitioner's net income, after the payment of interest, was as follows:

| Year | Amount |
|---|---|
| 1952 | $5,249.37 |
| 1953 | 4,321.39 |
| 1954 | 1,390.93 |

At the inception of petitioner corporation, new books were not opened and the existing partnership books were continued. The opening balance sheet of petitioner (which represents the closing balance sheet of the predecessor partnership), as stated in Schedule M of petitioner's corporation income and excess profits tax return for the year 1938, is as follows:

ASSETS

| | |
|---|---|
| Cash | $1,632.12 |
| Notes receivable | 2,367.56 |
| Buildings | 51,370.00 |
| Land | 187,250.00 |
| Total | $242,619.08 |

LIABILITIES

| | |
|---|---|
| Accounts payable | $1,128.28 |
| Mortgage payable | 66,000.00 |
| Common stock | 140.00 |
| Paid-in or capital surplus | 175,351.40 |
| Total | $242,619.08 |

At the end of the first year of operation, petitioner's closing balance sheet, according to its 1938 tax return, was as follows:

ASSETS

| | | |
|---|---|---|
| Cash | | $2,288.59 |
| Notes receivable | | 442.85 |
| Buildings | $107,632.00 | |
| Less reserve for depreciation | 1,797.95 | 105,834.05 |
| Land | | 395,368.00 |
| Total | | $503,933.49 |

LIABILITIES

| | |
|---|---|
| Accounts payable | $4,165.25 |
| Bonds and mortgages payable | 460,050.00 |
| Common stock | 140.00 |
| Paid-in or capital surplus | 39,113.17 |
| Earned surplus and undivided profits | 465.07 |
| Total | $503,933.49 |

In the years 1938 and 1955 petitioner's real estate was assessed as follows:

| Year | Land value | Total value |
|---|---|---|
| 1938 | $249,370 | $330,000 |
| 1955 | 249,370 | 357,850 |

In 1936 the property involved was appraised for estate tax purposes at $364,000.

The registered gold bonds issued by petitioner did not constitute a bona fide indebtedness.

OPINION.

The sole issue is whether certain registered gold bonds issued by petitioner upon its incorporation in 1938 constitute a genuine indebtedness so that payments thereon in the amount of $24,500 during each of the years 1952, 1953, and 1954 are deductible as interest

under section 23(b), I.R.C. 1939,[2] or under its substantially identical reenactment, section 163(a), I.R.C. 1954.

Whether a given instrument represents debt or stock is a question of fact, the resolution of which is not controlled by any one factor. "The determining factors are usually listed as the name given to the certificates, the presence or absence of maturity date, the source of the payments, the right to enforce the payment of principal and interest, participation in management, status equal to or inferior to that of regular corporate creditors, and intent of the parties." *John Kelley Co.*, 1 T.C. 457, 462, affd. 326 U.S. 521 (1946), reversing 146 F. 2d 466 (C.A. 7, 1944).

Upon consideration of the entire record we conclude that the registered gold bonds constituted a proprietary interest in petitioner in the nature of stock rather than a bona fide indebtedness and payments made thereon are not deductible as interest under the applicable statutory provisions.

The bonds in issue were unsecured and provided that interest thereon would be paid only at the discretion of petitioner's board of directors in an amount not to exceed 7 per cent. Interest payments were not cumulative and there were no provisions for maturity in case of default. Petitioner's seven stockholders constituted the board of directors and held the bonds and stock of petitioner in identical proportions, each owning one-seventh of both the stock and the bonds.

The fact that the instruments here in controversy lacked any obligation on the part of petitioner to pay interest is a strong indication of a stockholding, rather than a creditor-debtor, relationship. The right to enforce the payment of interest is one of the requisites of a genuine indebtedness. *John Kelley Co.*, *supra*; *Gooding Amusement Co.*, 23 T.C. 408, affd. 236 F. 2d 159 (C.A. 6, 1956). Interest, as it is generally understood, "is the amount which one has contracted to pay for the use of borrowed money." *Old Colony R. Co. v. Commissioner*, 284 U.S. 552, 560 (1932). It has been said that "[s]tockholders have no absolute right to dividends until they are declared. A creditor has a right to his interest in any event." *Commissioner* v. *Meridian & Thirteenth R. Co.*, 132 F. 2d 182 (C.A. 7, 1942). "It is not essential that interest be computed at a stated rate, but only that a sum definitely ascertainable shall be paid for the use of borrowed money, pursuant to the agreement of the lender and borrower." *Kena, Inc.*, 44 B.T.A. 217, 221.

---

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

(b) INTEREST.—All interest paid or accrued within the taxable year on indebtedness, \* \* \*

The controverted instruments did not provide for either a stated rate or a definitely ascertainable amount of interest. Payment of interest was entirely contingent upon the discretion of petitioner's board of directors. Their discretion was limited only by the imposition of the 7 per cent maximum annual rate. The bondholders did not, in any way, have the right to enforce the payment of interest.

Petitioners argue that "there is no essential distinction between the provisions of the *Kelley* debentures [see *John Kelley Co.*, *supra*] which provided for interest, *if earned*, and the provisions of the Gokey bonds for the payment of interest not to exceed 7% per annum," contending that the interest clause of the Gokey instruments "definitely carries the implication that interest shall be paid if earned." In the *Kelley* debentures, however, payment of a flat rate of interest was conditioned only upon the sufficiency of net income to meet the obligation. Thus, an essential distinction between the debt instruments in *Kelley* and the instant bonds does exist. In *Kelley* a liability to pay a definitely ascertainable amount of interest existed, even though it was contingent upon petitioner's ability to pay. Here no enforcible obligation to pay any interest whatsoever existed.

Our conclusion that the registered gold bonds did not constitute a genuine indebtedness finds further support in the nature of the interest payments actually made. The amount of interest to be paid was determined at the end of each year when the net income of the corporation had been determined. The fourth quarter payments were greater than the payments made in the earlier quarters of each year and since 1943 such fourth quarter payments have been equal to or greater than the sum of all the payments made in the first three quarters in each year. Petitioner's method of paying interest was more consistent with the declaration of a dividend than with the payment of interest.

The transfer of the assets of the partnership to the petitioner in exchange for the bonds and stock constituted little more than the exchange of a proprietary interest in a partnership for a proprietary interest in a corporation. There was no identification or allocation of the assets exchanged for the stock and the assets exchanged for the bonds. Notwithstanding the absence of any specific provisions for subordination to general creditors, it is our view the bonds were no less at the risk of the business than the stock. The seven members of the Gokey family group held the stock and bonds in identical proportions and were in complete control of petitioner's assets and the distribution of its profits. Prior to incorporation they had received the rental income of Gokey Properties as owners of undivided interests therein. After petitioner's incorporation they received practically the entire rental income of petitioner in their nominal

status as bondholders. Contrary to petitioner's statement on brief, the record does not disclose the payment of a single dividend on stock throughout petitioner's entire existence. In fact, the distribution of rental income from petitioner's real estate holdings, whether called interest or dividends, would have gone to the same persons in the same proportions. These facts, including the entirely discretionary interest provisions of the controverted instruments, compel their treatment as equity capital rather than as debt. Cf. *Hoguet Real Estate Corporation*, 30 T.C. 580; *1432 Broadway Corporation*, 4 T.C. 1158, affd. 160 F. 2d 885 (C.A. 2, 1947).

Accordingly, we hold that respondent did not err in disallowing the deductions claimed as interest payments on the registered gold bonds during the years 1952, 1953, and 1954.

Respondent, on brief, argues "thin capitalization" and seeks to establish an unfavorable debt-equity ratio. However, in view of other factors clearly indicating that the bonds did not constitute a genuine indebtedness, we deem it unnecessary to consider this argument.

*Decision will be entered for the respondent.*