Morris Moughon and Virginia Moughon v. Commissioner. Martin A. Hayes & Co., Inc. v. Commissioner. Hubert C. Cunningham v. Commissioner.
Moughon v. Commissioner
Docket Nos. 88838, 88847, 88848.
United States Tax Court
T.C. Memo 1963-25; 1963 Tax Ct. Memo LEXIS 319; 22 T.C.M. (CCH) 94; T.C.M. (RIA) 63025; January 29, 1963
*319 Held, that certain instruments denominated "debentures" issued by the corporate petitioner to the individual petitioners, in proportion to their stock holdings, in exchange for the goodwill and other intangible assets of a partnership business did not represent "indebtedness" within the meaning of section 163(a) of the Internal Revenue Code of 1954, that the corporation is not entitled to deductions of purported "interest" thereon, and that amounts paid to the individual petitioners upon the retirement of some of such instruments constituted taxable dividends to them. John M. Barksdale, Esq., Nashville Trust Bldg., Nashville, Tenn., and Richard H. Frank, Jr., Esq., for the petitioners. Robert B. Milsten, Esq., for the respondent. ATKINS
Memorandum Findings of Fact and Opinion *320 ATKINS, Judge: The respondent determined deficiencies in income tax as follows: Docket
Defi-
No.
Petitioner
Year
ciency
88838
Morris Moughon
and Virginia
Moughon
1956
$ 1,604.14
1957
4,376.78
1958
7,753.04
88847
Martin A. Hayes
and Co., Inc.
9/30/56
5,264.69
9/30/57
5,312.83
9/30/58
8,053.36
88848
Hubert C. Cun-
ningham
1957
146.53
1958
10,468.01
The *321 parties have conceded certain issues. The issues remaining for decision are (1) whether instruments denominated "debentures" which were issued by the petitioner Martin A. Hayes & Co., Inc., to petitioners Morris Moughon and Hubert C. Cunningham at the time of its organization represented "indebtedness" of the corporation entitling it to deductions during its fiscal years ended September 30, 1956, 1957, and 1958 in the respective amounts of $9,960, $9,960, and $9,462 as interest paid thereon; and (2) whether the amounts of $4,150 and $10,000 paid by the corporation to each of the petitioners Morris Moughon and Hubert C. Cunningham in the calendar years 1957 and 1958, respectively, upon retirement of a part of the above instruments constituted dividends to them. Findings of Fact Some of the facts have been stipulated and are incorporated herein by this reference. Petitioner Martin A. Hayes & Co., Inc., hereinafter referred to as "the corporation," is a corporation organized and existing under the laws of the State of Tennessee. It filed its income tax returns for the taxable years ended September 30, 1956, 1957, and 1958 with the district director of internal revenue at Nashville, *322 Tennessee. It at all times material herein kept its books and reported income on an accrual method of accounting. Petitioners Morris Moughon, hereinafter referred to as "Moughon," and Virginia Moughon are husband and wife residing in Nashville. They filed joint income tax returns for the calendar years 1956, 1957, and 1958 with the district director of internal revenue at Nashville. At all times material herein they employed the cash receipts and disbursements method of accounting in reporting their income. Virginia Moughon is a party to this proceeding only because she and her husband filed joint income tax returns for the years 1956, 1957, and 1958. Petitioner Hubert C. Cunningham is a single individual residing in Nashville. He filed his income tax returns for the calendar years 1956, 1957, and 1958 with the district director of internal revenue at Nashville. During the years involved herein he employed the cash receipts and disbursements method of accounting in reporting income. About September 1, 1926, Martin A. Hayes and Cunningham formed a partnership under the name of Martin A. Hayes & Co. to conduct a general insurance business, or agency, in which Hayes owned a three-fourths *323 interest and Cunningham owned a one-fourth interest. After the death of Hayes in 1944, Moughon and Cunningham paid Hayes' estate $15,000 cash and 15 percent of the partnership profits for five years for Hayes' share of the partnership's intangible assets, consisting of insurance expirations, goodwill and the right to use the name of Martin A. Hayes & Co., and his share of its physical assets, consisting of office furniture and fixtures. [1] The cash and receivables were not included among the assets purchased by Moughon and Cunningham, but were liquidated and credited to Hayes' estate and Cunningham according to their respective interests. Moughon and Cunningham conducted the general insurance business, or agency, as a partnership, sometimes hereinafter referred to as "the partnership," pursuant to a written agreement executed on June 19, 1945, which provided that each of them owned one-half of the partnership assets and that each was entitled to one-half of the net profits and should share losses in the same proportion. The agreement provided that the capital of the partnership *324 consisted of the business, records, renewals, goodwill and intangibles, cash, receivables, and certain personal property and equipment of Martin A. Hayes & Co. It was provided therein that the term for which the partnership was organized was from June 19, 1945 to June 18, 1950. The agreement further provided that in the event of the death of either partner during the term of the partnership, all of his right, title and interest in the records, renewals, goodwill and intangibles, as well as all furniture, furnishings, supplies and equipment, should be sold by the executor or representative of the estate of the deceased partner to the surviving partner for the sum of $25,000; and that for the purpose of such purchase a policy of life insurance for $25,000 should be procured and maintained on the life of each partner. After the expiration of the partnership agreement on June 18, 1950, Moughon and Cunningham continued to operate the partnership until October 1, 1955, under an oral contract which provided that they would share profits and losses of the partnership equally, as they had under the written agreement, but which contained no provision for the purchase of a deceased partner's *325 interest by the surviving partner. In 1955 Moughon and Cunningham decided to incorporate the business. Cunningham had been in poor health and one of the reasons for the incorporation was to insure the continuity of the business. Incorporation would avoid the necessity of executing new commission arrangements with various insurance companies in the event of the formation of a new partnership from time to time. It was also believed that it would be necessary to bring younger men into the business and the incorporation of the business would provide a means of giving such men an opportunity of buying an interest in the business. Incorporation of the business with the issuance of a large number of shares of stock and the issuance of bonds was suggested by a certified public accountant in order to attain these objectives, and such accountant also advised them with respect to the tax consequences thereof. Accordingly, on October 1, 1955, the petitioner corporation, Martin A. Hayes & Co., Inc., was organized to carry on the business. [2] Its authorized capital stock consisted of 75,000 shares of $1.00 par value class A voting common stock and 75,000 shares of $1.00 par value class A voting *326 common stock and 75,000 shares of $1.00 par value class B nonvoting common stock, the subscribers thereto being Moughon and Cunningham in equal proportions. The minutes of the meeting of the incorporators, held on October 1, 1955, state that it had been proposed by the subscribers to the stock to exchange certain assets of the partnership to the corporation for the stock and obligations of the corporation; that the chairman, Cunningham, stated that the assets proposed to be exchanged for 150,000 shares of the capital stock exceeded the value of the stock by more than $166,000, and that he suggested that debentures of the corporation be issued and exchanged for this excess; that it was resolved to issue debentures in the amount of $166,000; that the subscribers to the stock presented to the meeting an exchange contract transferring the specific assets of the partnership, as shown in the exchange contract, [3] to the corporation received in full payment of the stock subscriptions; and that the corporation should deliver its stock and debentures to Moughon and Cunningham in equal amounts. *327 In accordance with the resolution the stock above referred to was issued to Moughon and Cunningham in equal proportions. The certificates were dated October 1, 1955, but the stubs in the stock record book indicate that the certificates were not received by Moughon and Cunningham until December 13, 1957. On October 1, 1955, the corporation issued 166 instruments, each denominated "20 year - 6% DEBENTURE" and each in the principal amount of $1,000, one-half of these being issued to Moughon and one-half to Cunningham. The instruments are not in registered form. In each such instrument the corporation promised to pay to the bearer the principal sum on September 30, 1975, and agreed to pay, in the meantime, and thereafter until the principal and interest should have been fully paid, interest thereon at the rate of 6% per annum, semiannually on April 1 and October 1 of each year. Therein the corporation charged with such payment of its undertaking all its property whatsoever, both present and future, the debentures ranking ratably as a charge upon the property without preference or priority one over the other. It was further provided that if for any reason an interest payment should *328 not be made, when due, such interest should be accumulated, and that the amount of any interest so accumulated should be paid before any dividends might be declared and paid on the common stock. At the date of incorporation Moughon and Cunningham transferred to the corporation tangible assets in the amount of $10,000, consisting of partnership furniture and fixtures having a book value of $1,838.87, two automobiles with an aggregate book value of $4,116.80, and accounts receivable due from Moughon and Cunningham in the respective amounts of $2,022.16 and $2,022.17 (such accounts being paid to the corporation by the individuals about 20 days later). They also transferred to the corporation goodwill and other intangibles of the partnership, consisting of the firm name, contracts with insurance companies for which the partnership had been acting as agent, and the expiration records showing the names and addresses of policy holders, the types and amounts of insurance and the dates of expiration of policies. Such goodwill and other intangibles were recorded on the corporate books at a value of $306,000. Such value was computed by the use of a formula, being 1 1/2 times the average annual *329 gross commissions for the preceding 3 or 4 years. It was customary, in computing the value of intangible assets of general insurance agencies for purposes of sales in the Nashville area, to multiply the prior year's gross commissions by 1 1/2. The goodwill and other intangibles of the partnership had not been carried on the partnership's books at any cost basis or other value. As of September 30, 1955, the partnership had cash totaling $87,657.94 and accounts receivable totaling $191,718.46, as shown by its books. However the cash and accounts receivable of the partnership were not transferred to the corporation, but were credited to Moughon and Cunningham. The partnership ceased active conduct of the insurance business on and after September 30, 1955, but remained in existence for the purpose of collecting the receivables and paying the accounts collected to Moughon and Cunningham. The partnership had operated on a calendar year basis and had employed an accrual method of accounting for reporting income. At the time of the formation of the corporation Moughon and Cunningham each loaned the corporation $10,000 as operating capital, by drawing a check in the amount of $20,000 on *330 the partnership's bank account made payable to the corporation. These loans were evidenced by demand notes given by the corporation to Moughon and Cunningham which were satisfied in full by the payment of $10,000 to Moughon in 1956 and $10,000 to Cunningham in 1958. The corporation claimed, and the respondent allowed, deductions of interest paid on such notes in its fiscal years ended September 30, 1956, 1957, and 1958. The corporation has not borrowed any money except that borrowed from Moughon and Cunningham. Both Moughon and Cunningham devoted all their time to the business of the corporation. Moughon was and is the president and Cunningham was and is the vice president-treasurer. Since the formation of the corporation Moughon and Cunningham have sold class B nonvoting stock of an aggregate par value of $35,000 to 3 new employees of the corporation. They have not sold any shares of the class A voting stock. When originally issued the nonvoting class B stock carried the same rights as to dividends and liquidation as the class A voting stock. However, by amendment to the charter recorded on November 15, 1956, it was provided that dividends might be declared and paid on either *331 or both classes of stock and might be in one amount for one class and in a different amount for the other., During its fiscal years 1956, 1957, and 1958 the corporation declared dividends on each class of its stock at the rate of $0.10 per share. The corporation's books show annual gross commissions earned and net income before taxes as follows: Fiscal Years Ended
Gross
Net
September 30
Commissions
Income
1956
$222,166.21
$ 54,384.24
1957
254,598.46
69,517.18
1958
302,414.81
99,215.18
1959
392,228.28
143,549.66
1960
473,625.76
202,312.58
1961 (up to 8-31-61)
529,275.07
333,965.57
The corporation has regularly paid annually to Moughon and Cunningham 6 percent of the face amount of the debentures held by them. It deducted as interest paid in connection with such debentures the amounts of $9,960 in each of its fiscal years 1956 and 1957, and $9,462 in its fiscal year 1958. In the deficiency notice the respondent disallowed the deductions claimed by the corporation for each of such years "because the deductions as aforesaid in connection with debentures which you issued October 1, 1955, coincidentally with your organization and incorporation *332 are not deductions for which provision is made in section 163 of the Internal Revenue Code of 1954". On October 21, 1957, September 10, 1958, and May 21, 1959, the corporation paid Moughon and Cunningham each the respective amounts of $4,150, $10,000, and $10,000 for the stated purpose of retiring debentures in those face amounts. Neither Moughon nor Cunningham reported any portion of these amounts received in 1957 and 1958 as income in their income tax returns for those years (although each disclosed the receipt of the $10,000 in his 1958 return, claiming that it was received upon retirement of debentures and did not represent the realization of profit or loss). In the notices of deficiency the respondent determined that the amounts of $4,150 and $10,000 which each received in 1957 and 1958, respectively, were properly includable in income in accordance with section 61 of the Internal Revenue Code of 1954. He treated these amounts, as well as the amounts claimed to be interest, as dividends received for purposes of the credit allowed under section 34 of the Internal Revenue Code of 1954 for dividends received. *333 The corporation had earnings and profits available for the payment of taxable dividends in the taxable years in question equal to or greater than the aggregate of all the above payments made by the corporation and claimed to be interest on debentures and amounts in retirement of debentures. The goodwill and other intangibles of the partnership which Moughon and Cunningham transferred to the corporation on October 1, 1955, in exchange for stock and debentures had a fair market value on that date of at least $306,000. The debentures issued by the corporation to Moughon and Cunningham did not represent indebtedness of the corporation within the meaning of section 163(a) of the Internal Revenue Code of 1954. Opinion The respondent determined, and contends, that the instruments issued by the corporation to the individuals, although denominated debentures, are artificial and not valid debt instruments, and that the payments made, allegedly as interest, as well as the amounts paid upon retirement of some of such instruments, in reality constituted dividends. He therefore denied the corporation any deductions-under section 163(a) of the Internal Revenue Code *334 of 1954[4] for interest paid on such instruments, and increased the income reported by the individuals by the amounts received upon retirement of some of the instruments. It is the respondent's contention that the transaction whereby the debentures were issued was unrealistic and a sham for tax avoidance purposes; that the petitioners were obviously trying to capitalize future earnings as debt and attempting to withdraw them either tax free or as capital gains. It is his position that partnership goodwill or intangibles alleged in the amount of $306,000 has not been established, and that therefore the debentures were not issued for a valuable consideration, and that in any event any property actually transferred to the corporation for the debentures was in the nature of a contribution to equity capital and did not result in the creation of a valid debt obligation. The petitioners, on the other hand, contend that the debentures were issued for a valuable consideration, and that they represented a valid indebtedness within the meaning of *335 the statute. It has been held that the term "interest on indebtedness" as used in the revenue statutes means "compensation for the use or forbearance of money" ( Deputy v. duPont, 308 U.S. 488), and "the amount which one has contracted to pay for the use of borrowed money" ( Old Colony R.R. Co. v. Commissioner, 284 U.S. 552). The term "indebtedness" as used in the Federal tax statutes may not carry the same meaning as the same word used in the context of corporate finance. Gilbert v. Commissioner, (C.A. 2) 248 F. 2d 399. In the case of a closely held corporation, such as is here involved, what purports to be an indebtedness giving rise to purported interest, may in reality represent an equity interest in the corporation. It is well established that the fact that a particular transaction is cast in the form of the creation of an indebtedness is not determinative. It is the substance of the transaction which is decisive. Talbot Mills v. Commissioner, 326 U.S. 521; Gooding Amusement Co., 23 T.C. 408, affd. (C.A. 6) 236 F.2d 159, certiorari denied 352 U.S. 1031; and Gilbert v. Commissioner, supra. *336 The issue is primarily factual, the burden being upon the taxpayer to establish that a debtor-creditor relationship has been created. Each case must be decided upon the totality of its facts. Numerous criteria have been set forth in the cases as aids for determining the question, but no single factor is decisive. Gooding Amusement Co, supra; Charter Wire, Inc. v. United States, (C.A. 7) 309 F. 2d 878; and Consumers Credit Rural Electric Cooperative Corp., 37 T.C. 136, on appeal (C.A. 6). As stated, the respondent argues that the only motive for the issuance of the debentures was one of tax avoidance. The petitioners, on the other hand, contend, and there was testimony to the effect, that their motive for issuing debentures was to reduce the value of the equity interest in the corporation in order to be able to sell new employees a greater interest in the corporation. There is, of course, nothing reprehensible in casting one's transactions in such a fashion as to produce the least tax. But the question for determination is whether what was done, apart from a tax motive, was the thing which the statute intended. Gregory v. Helvering, 293 U.S. 465; *337 Knetsch v. United States, 364 U.S. 361; and Gooding Amusement Co., supra.And it is also true that a taxpayer may well act with the utmost good purpose and yet his transactions may in effect be the equivalent of the distribution of dividends. Gooding Amusement Co. v. Commissioner, supra. In Commissioner v. Meridian & Thirteenth Realty Co., (C.A. 7) 132 F. 2d 182, it was pointed out that an essential difference between a creditor and a stockholder is that the latter intends to make an investment and takes the risks of the venture, while the former seeks a definite obligation, payable in any event. And in Gilbert v. Commissioner, supra, the court pointed out that Congress meant the significant factor to be whether funds are advanced with reasonable expectations of repayment regardless of the success of the venture, or are placed at the risk of the business, and stated that it would do violence to the Congressional policy to permit an "interest" deduction where the "loan" is so risky that it can be regarded only as venture capital. Here the instruments meet the formal criteria of indebtedness. They are denominated "debentures", *338 they contain unconditional promises to pay a sum certain at a fixed maturity date, the interest is not left to anyone's discretion, and the obligations are not subordinated to general creditors. Nevertheless, upon a consideration of the whole record, we think such instruments did not in reality and in substance represent indebtedness of the corporation within the meaning of section 163(a) of the Code, and we have so found as a fact. Here Moughon and Cunningham, who were equal owners of the business conducted by the partnership, transferred certain of the partnership's assets to the corporation and each received $37,500 par value of the class A voting stock, $37,500 of the class B nonvoting stock, and $83,000 face value of debentures. [5] At all times their debenture holdings were in direct proportion to their stock ownership. The stock and debentures were issued in exchange for tangible assets of only $10,000 (which included accounts receivable from the two individuals in the amount of about $4,000) and the goodwill and other intangibles, or going concern assets, of the partnership at a valuation of $306,000. We have concluded and have found as a fact that the goodwill and other intangibles *339 had a value of at least $306,000. [6] None of the accounts receivable owing to the partnership from third parties in the amount of about $190,000 and none of the partnership cash in the amount of about $87,000 was transferred to the corporation. Thus, no substantial amount of working capital was furnished to the corporation upon its organization in return for either the stock or the debentures. In order to provide working capital Moughon and Cunningham, in a separate transaction, loaned the corporation $20,000, evidenced by notes. No allocation of the assets transferred to the corporation was made as between the $150,000 par value *340 of stock and the $166,000 face value of debentures. Under the circumstances, it must be concluded that the only consideration paid for the debentures consisted of a part of the goodwill and other intangibles. The fact that the debentures were held by Moughon and Cunningham in direct proportion to their stock ownership raises a strong inference that the debentures in substance and in reality represent an equity ownership. Charter Wire, Inc., v. United States, supra, and Arlington Park Jockey Club v. Sauber, (C.A. 7) 262 F. 2d 902. While, of course, stockholders may in some circumstances advance funds to their corporation and thereby create a valid debt, as for example, by furnishing funds to provide working capital, as in Rowan v. United States, (C.A. 5) 219 F. 2d 51, such was not the case here. As pointed out, the consideration paid for the debentures consisted of a part of the goodwill and other intangibles. Here, as in Gooding Amusement Co., supra, there was no true borrowing element in connection with the issuance of the debentures. The only loan made by the individuals was made in a separate transaction and was evidenced by *341 notes. We think the conclusion is inescapable that the assets, consisting of a part of the goodwill and other intangibles, for which the debentures were issued, were assets which were placed at the risk of the corporate business. These assets were, of course, essential assets of the business conducted by the partnership and they became permanent assets of the corporation, essential to the conduct of its business, and hence a part of its permanent capital structure. This has been recognized as an important factor in prior cases. Charter Wire, Inc., v. United States, supra, and Brake & Electric Sales Corp. v. United States, (C.A. 1) 287 F. 2d 426. And in Sam Schnitzer, 13 T.C. 43, affd. per curiam (C.A. 9) 183 F. 2d 70, certiorari denied 340 U.S. 911, we took the view that assets of this character are, by their very nature, placed at the risk of the business. We also note that although the debentures purport to be secured, in that they are made a charge upon all the assets of the corporation, the only tangible assets which were available as security consisted of the $10,000 in assets transferred upon incorporation, *342 plus the $20,000 which the individuals loaned to the corporation in the separate transaction. Furthermore, there was no provision for a sinking fund for retirement and there was no provision for the maturing of the principal obligation upon the failure to make interest payments. All these facts indicate that the debentures were not issued with reasonable expectation of repayment regardless of the success of the venture. In short, the assets transferred for the debentures were placed at the risk of the business. Under all the circumstances it seems to us that the transfer of the assets of the partnership to the corporation for stock and debentures constituted nothing more than the exchange of a proprietary interest in the partnership for a proprietary interest in the corporation. See Gokey Properties, Inc., 34 T.C. 829, affd. per curiam (C.A. 2) 290 F. 2d 870. The petitioners rely principally upon John W. Walter, Inc., 23 T.C. 550. As we have stated, each case must be decided upon the basis of its total facts. While the Walter case is similar to the instant case in some respects, it differs in others. We think that the fact that there was no *343 new capital or money transferred to the corporation for the debentures, when there was a need for operating capital as evidenced by the corporation's borrowing of $20,000, and the fact that the assets which were transferred for the debentures were a part of the corporation's permanent capital structure, serve to distinguish the instant case from the Walter case. We conclude that the debentures represented an equity interest in the corporation, rather than indebtedness, and hence were the equivalent of stock. The amounts paid as "interest" were in reality dividends and the amounts received by Moughon and Cunningham upon retirement of debentures were essentially equivalent to dividends. The respondent did not err in disallowing the former as deductions to the corporation and treating the latter as ordinary income to the individuals. Decisions will be entered under Rule 50. Footnotes
1. The total amount paid by Moughon and Cunningham for Hayes' interest is not shown by the record.↩
2. The corporation was organized to and does now conduct a general insurance business, or agency, representing insurance companies and collecting premiums on general insurance policies, such as fire, tornado, and other casualty and extended coverage insurance, and also collecting premiums on fidelity and performance bonds, being principally contractors' bonds. ↩
3. Counsel for the petitioners stated at the hearing that if there ever was such an exchange agreement in existence it could not be located. The testimony shows that the petitioners made an unsuccessful search for such an exchange agreement.↩
4. Sec. 163(a)↩ provides that there shall be allowed as a deduction "all interest paid or accrued within the taxable year on indebtedness."
5. The parties agree that such transaction was a tax-free exchange under section 351(a) of the Code. ↩
6. Testimony establishes that the value of $306,000 which the petitioners computed on the basis of 1 1/2 times average gross commissions over the prior 3 or 4 years was less than the value which would have been computed by the method normally used in that area for fixing fair market value of intangibles of a general insurance agency for purposes of sale. Furthermore, subsequent earnings of the corporation corroborate a value of at least $306,000.↩